293 N.J. Super. 536 (1996)
681 A.2d 1226
CHOPPER EXPRESS, INC., PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF INSURANCE OF THE STATE OF NEW JERSEY, AND PROGRESSIVE CASUALTY INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1996.
Decided September 13, 1996.
*537 Before Judges PETRELLA, SKILLMAN and EICHEN.
W. Cary Edwards argued the cause for appellant (Edwards, Caldwell & Poff, attorneys; Carlet, Garrison & Klein, attorneys; Mr. Edwards, George L. Garrison and Norman I. Klein, of counsel and on the briefs; Douglas F. Doyle and Allan R. Jacobs, on the briefs).
B. Stephan Finkel, Deputy Attorney General, argued the cause for respondent Department of Insurance (Deborah T. Poritz, Attorney General, attorney; Mary C. Jacobson and Joseph L. *538 Yannoti, Assistant Attorneys General, of counsel; Mr. Finkel on the briefs).
Marc L. Dembling argued the cause for respondent Progressive Casualty Insurance Co. (Berlin, Kaplan, Dembling & Burke, attorneys; Mr. Dembling, of counsel and on the briefs).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The issue presented by this appeal is whether the Appeals Subcommittee of the governing committee established under the plan of operation of the New Jersey Automobile Insurance Plan, Commercial Automobile Insurance Plan (CAIP), is authorized to adjudicate a dispute regarding the amount of premiums owed by a party insured under the plan.
Appellant Chopper Express, Inc. (Chopper) is a trucking company which transports automobile parts between its customers' warehouse/distribution centers and their dealerships on the Atlantic Coast. After relocating its primary business operations to New Jersey in 1988, Chopper obtained commercial motor vehicle coverage from respondent Progressive Casualty Insurance Company (Progressive) through an assignment under the CAIP plan of operation.
After an audit of Chopper's operations in April 1991, Progressive changed the classification of many of Chopper's vehicles from long to short and intermediate haul and also changed Chopper's listed garage location from Little Falls to North Bergen. These changes resulted in a substantial increase in Chopper's premiums. Chopper disputed the reclassification of its vehicles, and the parties then engaged in negotiations to resolve their differences. However, these negotiations were unsuccessful, and Chopper's policy was canceled effective October 12, 1991. The notice of cancellation sent by Progressive stated that Chopper could "file a written complaint concerning this cancellation ... with the New Jersey Department of Insurance." Subsequently, Progressive *539 sent a notice to Chopper that Chopper owed an additional $138,962.50 in premiums for coverage provided prior to cancellation. Chopper refused to pay this amount, taking the position that it was entitled to a refund of $16,124.60 in unearned premiums.
Chopper filed a complaint with the respondent Department of Insurance (the Department) alleging, among other things, that the increase in its premium and consequent cancellation of its policy were contrary to the CAIP rules. Chopper asked the Department "to rule on the legality of these premium increases and the rating methods employed by Progressive" and to order Progressive to "cease and desist" from "pressing" for the payment of additional premiums. Progressive filed a response which asserted that its actions had been "reviewed and approved by the New Jersey Automobile Insurance Plan."
Chopper's complaint was ultimately referred to an agency called the Appeals Subcommittee of the CAIP governing committee (the Appeals Subcommittee). The Appeals Subcommittee conducted a hearing at which Chopper challenged Progressive's determination that North Bergen was its principal place of garaging and disputed Progressive's authority to modify the 1990 premium after completion of the policy term. After the hearing was concluded, the Appeals Subcommittee accepted a "loss control report" submitted by Progressive which purported to show that Chopper did not have sufficient space in Little Falls to principally garage its equipment. Chopper objected to the Appeals Subcommittee's consideration of this report, claiming that it described Chopper's operations in June 1993 and thus was not probative of whether it had principally garaged its trucks in Little Falls during the 1990 and 1991 policy periods.
On August 24, 1993, the Appeals Subcommittee rendered a decision in favor of Progressive, specifically finding that plaintiff's trucks were principally garaged in North Bergen and that Progressive was permitted to audit and adjust plaintiff's premium up to three years after the conclusion of the policy period. Therefore, the Appeals Subcommittee concluded that "Progressive has *540 earned all premium[s] paid which [were] based on North Bergen as Chopper's principal place of garaging," and that "Progressive is entitled to collect any additional premiums due or outstanding, ... based on this Subcommittee's Decision."
Chopper appealed the Appeals Subcommittee's decision to the Commissioner of Insurance (the Commissioner). Since the proceedings before the Appeals Subcommittee had not been transcribed, the Commissioner reviewed only the documents presented at the hearing and the Subcommittee's decision. Based on this limited record, the Commissioner affirmed the Appeals Subcommittee's decision.
Chopper then filed a notice of appeal with this court. In its initial brief, Chopper argued that the agency proceeding violated principles of administrative due process because the Appeals Subcommittee is composed of persons with a financial interest in assessing higher premiums upon parties insured under CAIP. After receiving this brief, the Department moved for a remand to the Commissioner for reconsideration. We granted this motion, and the Department then prepared a transcript of the proceedings before the Appeals Subcommittee for the Commissioner's review.
After reviewing this transcript, Chopper's counsel submitted an affidavit which indicated that the hearing transcript contained "gaps," including portions of the testimony of Chopper's President. Consequently, Chopper requested a de novo hearing. The Commissioner denied this request, however, and reaffirmed his prior decision, concluding that the Appeals Subcommittee's decision "is not arbitrary or capricious, and that its findings and conclusions are adequately supported by evidence in the record."
After the remand, Chopper filed a supplemental brief which again argued, among other things, that the proceedings before the Department violated principles of administrative due process because the Appeals Subcommittee, "made up exclusively of insurance industry representatives, had a self-serving interest in finding in favor of [Progressive]," and that the procedures followed by *541 the Commissioner in reviewing the Appeal Subcommittee's decision were fundamentally unfair.
In our initial review of the appeal, we noted that there was an absence of express statutory authority for the establishment of either a governing committee composed primarily of insurance company employees to administer CAIP or an Appeals Subcommittee to hear disputes arising under CAIP. Since the primary basis of Chopper's appeal was a constitutional attack upon the composition of the Appeals Subcommittee and "courts should not reach constitutional questions unless necessary to the disposition of the litigation," O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240, 624 A.2d 578 (1993), we directed the parties to file supplemental briefs dealing with whether the Commissioner has express or implied statutory authority to establish a subordinate agency within the Department to adjudicate what is essentially a private contractual dispute between an insurance company and an insured.
We conclude that the Legislature did not authorize the Commissioner to create an Appeals Subcommittee to hear disputes between insurance companies and insureds as to the amount of an insured's premium obligations. Therefore, we reverse the Commissioner's final decision.
Before discussing the Appeals Subcommittee's authority to adjudicate the amount of an insured's premium obligations, we consider it appropriate to note those issues we do not pass upon. First, we do not question the Department's authority to investigate alleged violations by insurance companies of applicable statutory and regulatory provisions, including regulations and plans of operations adopted pursuant to N.J.S.A. 17:29D-1, or to conduct administrative proceedings relating to any such alleged violations. Second, we do not question the insurance coverage plan for commercial motor vehicles. Third, we do not decide whether N.J.S.A. 17:1C-6(i) provides sufficient authorization for the Commissioner's creation of the CAIP governing body to administer the CAIP program. Fourth, we do not decide whether the Commissioner *542 of Insurance herself has authority to hear a dispute between an insured and an insurer as to the amount of premiums due under an insurance policy. Instead, we deal only with the authority of the Appeals Subcommittee.
"Administrative agency power derives solely from a grant of authority by the Legislature." General Assembly of N.J. v. Byrne, 90 N.J. 376, 393, 448 A.2d 438 (1982). Thus, an administrative agency possesses only "expressly granted" powers and "those incidental powers which are reasonably necessary or appropriate to effectuate the specific delegation." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978) (quoting In re Regulation F-22 of the Office of Milk Indus., 32 N.J. 258, 261, 160 A.2d 627 (1960)). "Where there exists reasonable doubt as to whether such power is vested in the administrative body, the power is denied." In re Closing of Jamesburg High Sch., 83 N.J. 540, 549, 416 A.2d 896 (1980). Consequently, the determination whether to confer quasi-judicial decision-making authority upon an administrative agency, and the scope of any such authority, is a policy question within the Legislature's exclusive domain. As the Court noted in Burlington County Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579, 598, 267 A.2d 533 (1970), in concluding that the original Employer-Employee Relations Act did not confer authority upon the Public Employment Relations Commission (PERC) to adjudicate unfair labor practice charges:
In our judgment, a policy question of that significance lies in the legislative domain and should be resolved there. A court should not find such authority in an agency unless the statute under consideration confers it expressly or by unavoidable implication.
Therefore, an agency cannot by administrative fiat assign itself quasi-judicial decision-making authority or create a subordinate agency to assist in performing this role.
The CAIP governing body and its Appeals Subcommittee were created under the purported authority of N.J.S.A. 17:29D-1, which authorizes the Commissioner to adopt "rules and regulations establishing a plan for the providing and apportionment of insurance *543 coverage for applicants therefor who are in good faith entitled to, but are unable to procure the same, through ordinary methods." The statute further provides that "[e]very insurer ... transacting any line ... of insurance in ... New Jersey shall participate in such plan and provide insurance coverage to the extent required in such rules and regulations." However, N.J.S.A. 17:29D-1 does not confer any quasi-judicial decision-making authority upon the Commissioner or Department beyond what is conferred by other sections of Title 17. Moreover, N.J.S.A. 17:29D-1 does not create, or confer power upon the Commissioner to create, a subordinate agency within the Department with quasi-judicial decision-making authority.
The Department argues that the authority to create a governing committee to administer CAIP and an Appeals Subcommittee to adjudicate disputes arising out of the administration of this plan may be found in N.J.S.A. 17:1C-6(i), which authorizes the Commissioner to "[a]ppoint such advisory committees as may be desirable to advise and assist the department or a division in carrying out its functions and duties." However, there is a fundamental distinction between an agency that acts in a purely advisory role and one that actually exercises governmental powers. See Ream v. Kuhlman, 112 N.J. Super. 175, 184, 270 A.2d 712 (App.Div. 1970). The conduct of a quasi-judicial hearing and the issuance of a decision resolving a dispute between an insurance company and an insured regarding the amount of premiums owed, even though subject to review by the Commissioner, clearly goes beyond simply acting in an advisory capacity.
In arguing that the Appeals Subcommittee may adjudicate a dispute as to the amount of premiums owed by an insured, the Department also relies upon cases which state that "the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and that the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." Department of Labor v. Titan Constr. Co., 102 N.J. 1, 11, 504 A.2d *544 7 (1985) (quoting New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562, 384 A.2d 795). These cases, however, involved agencies upon which the Legislature had conferred quasi-judicial decision-making authority in clear and unequivocal language, where the only question was the scope of the agency's investigatory, prosecutorial or remedial powers in performing legislatively delegated responsibilities.[1]See Department of Labor v. Titan Constr. Co., supra, Galloway Township Bd. of Educ. v. Galloway Township Ass'n of Educ. Secretaries, 78 N.J. 1, 15-16, 393 A.2d 207 (1978); In re Heller, 73 N.J. 292, 302-03, 374 A.2d 1191 (1977); Del Tufo v. J.N., 268 N.J. Super. 291, 298, 633 A.2d 572 (App.Div. 1993). For example, after the Legislature responded to Burlington County Evergreen Mental Hosp. v. Cooper, supra, by amending the Employer-Employee Relations Act to confer express authority upon PERC to adjudicate unfair labor practice charges, the Court held in Galloway Township Bd. of Educ. v. Galloway Township Ass'n of Educ. Secretaries, supra, that the agency's general authority to order "such reasonable affirmative action as will effectuate the policies" of the act, N.J.S.A. 34:13A-5.4(c), included the power to award back pay to an employee adversely affected by an unfair labor practice. 78 N.J. at 8-16, 393 A.2d 207. The Court stated that although the Employer-Employee Relations Act does not expressly authorize back pay awards, it "is a remedial enactment which should be construed in order to permit PERC effectively to discharge its statutory responsibilities." Id. at 15, 393 A.2d 207. Similarly, in Department of Labor v. Titan Constr. Co., supra, the Court concluded that the provisions of the Prevailing Wage Act which authorize the Commissioner of Labor to adjudicate alleged violations of the Act and to debar violators impliedly authorizes the debarment of responsible *545 corporate officers and principals of non-corporate entities. 102 N.J. at 11, 504 A.2d 7. The Court characterized the debarment of such parties as "an incidental power necessary to achieve the legislative objectives that the Act is designed to implement." Ibid.
In contrast, the use of an agency composed of industry employees to hear and render initial decisions in a dispute relating to the amount of premiums an insured owes an insurance company cannot reasonably be characterized as simply "incidental" to any authority expressly delegated to the Department. Therefore, as in Burlington County Evergreen Park Mental Hosp. v. Cooper, supra, the determination whether to extend such authority involves "a policy question of ... significance" that should be made "in the legislative domain." 56 N.J. at 598, 267 A.2d 533.
It is illuminating to compare N.J.S.A. 17:29D-1, which provides the purported authority for the establishment of the CAIP governing committee and Appeals Subcommittee, and N.J.S.A. 17:30E-1 to-24, which created the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA) to administer a plan for providing personal automobile liability insurance to persons unable to obtain coverage in the voluntary market. The latter legislation provides that the NJAFIUA shall be administered by a Board of Directors (the Board), N.J.S.A. 17:30E-5; specifically sets forth the manner of appointment of Board members and their terms of office, ibid; and provides that the Board shall adopt a plan of operation which "shall be submitted to the commissioner for his review and approval," N.J.S.A. 17:30E-6(b). In addition, it confers authority upon the Board to "[h]ear and determine complaints of any member or producer concerning the operation of the association," N.J.S.A. 17:30E-7(m), and to "[r]eview servicing practices of servicing carriers to determine whether such practices are adequate to properly service the risks written by the association," N.J.S.A. 17:30E-7(p). Most significantly, this legislation specifically authorizes the Board to conduct quasi-judicial hearings upon the request of "[a] member insurer or producer aggrieved by *546 a ruling of the association or by its alleged violation of or failure to comply with the plan of operation or the provisions of this act," and provides that such hearings shall be held before "a panel of the board consisting of not less than three member company representatives, one producer representative and one public member." N.J.S.A. 17:30E-16(a). This legislation further provides that the full Board may modify the panel's decision "on its own motion" ibid., and that any decision of the board or its panel shall be appealable to the Commissioner. N.J.S.A. 17:30E-16(b).
Thus, unlike N.J.S.A. 17:29D-1, the legislation creating the NJAFIUA expressly provides for the appointment of a Board to propose and administer a plan of operation and confers carefully circumscribed power upon a panel of the Board to conduct quasi-judicial hearings. However, even this specifically delegated power does not extend to a determination of the amount of premiums that an insured owes an insurer. Furthermore, since the foundation of Chopper's argument that the Appeals Subcommittee's proceedings violated principles of administrative due process is that a majority of its members are "salaried employees of ... insurer[s] which [are] ... participant[s] of CAIP," N.J.A.C. 11:3-1.4(a)(1), it is also noteworthy that N.J.S.A. 17:30E-5(a) provides that members of the Board of the NJAFIUA, other than ex officio members, shall be persons who have a background in automobile insurance law or practices but "who shall not, during their tenure on the board be affiliated with or employed by any producer, insurer servicing carrier or non-insurer servicing carrier, or any trade association or other entity representing the interests of any producer, insurer servicing carrier or non-insurer servicing carrier in this State." Thus, a decision by the hearing panel of the NJAFIUA Board would not be subject to challenge on the administrative due process grounds which Chopper relies upon in this appeal.
Although we question whether even the Commissioner herself is authorized to determine the amount of premiums owed by an insured, except insofar as may be required to decide whether an *547 insurance company has complied with its obligations under any applicable statute or administrative regulation, the parties have not briefed the issue. Consequently, we remand the matter to the Commissioner to afford her an opportunity to consider this issue in light of our opinion. If the Commissioner concludes that she has the authority to adjudicate this dispute, she should also consider whether it constitutes a "contested case" within the intent of N.J.S.A. 52:14B-2, which must be referred to the Office of Administrative Law for an adjudicatory hearing. See High Horizons Dev. Co. v. State of N.J., Dept. of Transp., 120 N.J. 40, 49, 575 A.2d 1360 (1990). If the Commissioner concludes that she does not have such authority, or that the dispute does not implicate any insurance regulatory concern which would warrant her exercise of authority, the parties would remain free to pursue their claims by an action in the Law Division.
Accordingly, the Commissioner's final decision affirming the decision of the CAIP Appeals Subcommittee is reversed and the matter is remanded to the Commissioner for further proceedings in conformity with this opinion.
NOTES
[1] We also note that many cases reciting these principles have involved the validity of administrative regulations dealing with subjects other than the authorization for or scope of quasi-judicial decision-making authority. See, e.g., In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 449-50, 608 A.2d 288 (1992); New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 561-62, 384 A.2d 795.