715 A.2d 358 (1998)
314 N.J. Super. 486
BOARD OF EDUCATION OF THE UPPER FREEHOLD REGIONAL SCHOOL DISTRICT, Plaintiff-Appellant,
v.
STATE HEALTH BENEFITS COMMISSION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1998.
Decided August 27, 1998.
Howard M. Newman, Neptune, for plaintiff-appellant (Kalac, Newman, Lavender & Campbell, attorneys; Mr. Newman, on the brief).
Sherrie L. Gibble, Deputy Attorney General, for defendant-respondent (Peter Verniero, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Gibble, on the brief).
*359 Before Judges KING, KESTIN and CUFF.
The opinion of the court was delivered by KESTIN, J.A.D.
By way of order to show cause and verified complaint, plaintiff, Board of Education of the Upper Freehold Regional School District (Board), sued in the Chancery Division to enjoin the State Health Benefits Commission (Commission) from "attempting to decide the controversy between the parties ... by any administrative procedure pursuant to any adjudicatory authority incorrectly and illegally assumed" by the Commission. The trial court determined that the Commission had properly asserted its authority to adjudicate the controversy administratively as a contested case pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-9, -10, subject to judicial review in the Appellate Division, R. 2:2-3(a)(2). Accordingly, the complaint was dismissed. The Board appeals. We affirm.
The genesis of the controversy occurred during the 1992-93 school year when the Board negotiated a successor collective agreement with an employee representative. Under the old contract, scheduled to expire on June 30, 1993, the Board had provided health benefits through the State Health Benefits Plan (SHBP or Plan) administered by the Commission pursuant to statute, N.J.S.A. 52:14-17.25 to -17.45. Under the new contract, effective September 1, 1993, the Board would provide health benefits through a private plan. The Board was to withdraw from the SHBP.
By a short certified letter, dated June 15, 1993 and received on June 17, the Board notified the Commission of its withdrawal effective September 1. The letter, in its essential entirety, declared:
The Upper Freehold Regional School District is withdrawing from the New Jersey State Health Benefits Program effective September 1, 1993. We are changing our health insurance carrier to CIGNA.
If you have any questions or need additional information, please let us know.
The Commission responded in a letter dated July 20, which, in its provisions material to this dispute, advised:
Since initial enrollment in the program is accomplished by a resolution adopted by the governing body, likewise, termination of participation must be accomplished in the same manner. I am enclosing the resolution which must be completed in its entirety. You should note the 60 day time element involved before termination will occur[.]
* * * *
As a terminating location, the following regulations deserve your attention:
* * * *
b) Before the final approval of your termination can be processed by the State Health Benefits Commission, all monetary obligations must be paid. Following our audit of your account, you will receive a separate and final billing for any shortages outstanding spanning your period of participation in the State Health Benefits Program. Also, at this time, a refund check will be issued to those locations showing overpayment. ABSOLUTELY NO ADJUSTMENTS SHOULD BE MADE TO YOUR FINAL PAYMENT.
c) Also, before the final approval of your termination can be processed by the State Health Benefits Commission, you must provide adequate documentation of your new program. In accordance with N.J.S.A. 18A:16-21, 52:14-17.27 and 40A:10-25. This documentation must include:
1. A copy of the new insurance or replacement contract.
2. The date the contract becomes effective.
3. The first year's premium under the contract.
4. The second year's projected premium.
5. Premiums for retirees, COBRA and conversion policy paying members.
6. A statement as to whether the premiums include incurred but unreported claims, or whether such claims would be *360 handled through an exit charge or other additional payment upon leaving the plan.
The Commission's letter was received after the Board's July meeting. Thus, the necessary resolution was adopted on August 25, providing for withdrawal effective September 1. It was immediately sent to the Commission.
In a letter dated August 31, the Commission took the position that the Board's withdrawal could be effective no earlier than November 1:
[T]here is a 60 day period after the receipt of the resolution before the termination can be effected. On this basis, we have scheduled your termination from the State Health Benefits Program for November 1, 1993.

* * * *
b) Before the final approval of your termination can be processed by the State Health Benefits Commission, all monetary obligations must be paid. Following our audit of your account, you will receive a separate and final billing for any shortages outstanding spanning your period of participation in the State Health Benefits Program. Also, at this time a refund check will be issued to those locations showing overpayment. ABSOLUTELY NO ADJUSTMENTS SHOULD BE MADE TO YOUR FINAL PAYMENT.
Subsequently, the Commission billed the Board $178,585.40 for anticipated health insurance premiums for September and October. In an exchange of letters, the Board, maintaining its position that its withdrawal was effective September 1, returned the Commission's billing statement.
By all accounts to date, no health benefits claim was paid to any Board employee under the Plan on or after September 1, 1993. Pursuant to the Board's contractual obligations with its employees, premiums have been paid to the private health plan carrier since that date.
In a letter dated February 4, 1994, the Commission modified its position on the amount due from the Board, proposing to resolve the claim for $91,139.52. That total was represented as reflecting amounts actually paid in administrative fees to the Plan's insurance carrier administrators for the Board's coverage during September and October 1993, plus HMO capitation premiums paid for those months, plus the search fees charged by the administrators to determine if any claims from Board employees in those months had been paid. The Board rejected the Commission's proposal in a February 8 letter, which stated:
It is the position of the Board of Education that the notice provided to the State Health Benefits Director on June 15, 1993, should have been sufficient to effect a withdrawal from the State Health Benefits Program. For some unexplained reason, no one at the State Health Benefits Commission ever contacted the Board Secretary to obtain any further information or documentation regarding the Board's withdrawal, until more than one month had transpired.
Thereafter, the Commission declared the controversy to be a contested case and referred it to the Office of Administrative Law for a hearing and initial decision. See N.J.S.A. 52:14B-10(c). The filing of the complaint in this matter followed.
Both in the trial court and on appeal, the Board's attack has been on two levels: addressing the merits of the Commission's claim and challenging the Commission's jurisdiction to adjudicate it. The merits issue is not ripe for resolution in the present posture of the case, however. Whether or not "[t]he Commission had adequate and appropriate notice of the Board's intent to withdraw, and the Board substantially complied with the Commission's requirements to withdraw from the Plan," as the Board argues, remains to be determined after the presentation of appropriate proofs and arguments. The only question before us in this appeal is where the issue is to be adjudicated. Resolution of the merits of the case must abide the event.
On the jurisdictional issue, the Board argues primarily that the Commission lacks the statutory authority to adjudicate its claim. The Board alludes, as well, to another argument, advanced with vigor before the trial court, that considerations of fundamental *361 fairness militate against permitting the Commission to adjudicate its own claim.
We dispose of the latter argument first by observing that it is characteristic of the administrative process for agencies to adjudicate disputes in which they have taken a position on the merits. That function is an essential element of any agency's regulatory authority. See In re Carberry, 114 N.J. 574, 585-86, 556 A.2d 314 (1989); In re Uniform Administrative Procedure Rules, 90 N.J. 85, 93-94, 447 A.2d 151 (1982). The Office of Administrative Law was created to bring objectivity to the process by providing an impartial fact-finding and initial-decision-making process, but the authority to render the final decision is, in most cases, the agency's to exercise. Id. at 94, 447 A.2d 151.
The Board's argument that concepts of fundamental fairness preclude exercise of the administrative adjudication power where the agency has a policy or other stake in the outcome, suggests that the power can be exercised validly only where the agency provides a forum for the resolution of issues in respect of which it has taken no position on the merits. However attractive this argument may seem at first blush, it negates an essential aspect of administrative law as a governmental concept. Carberry, the Uniform Administrative Procedure Rules case, and countless other sources, furnish ample rationale for rejecting the argument as antithetical to the structural context of the modern American state.
The only significant issue in the case at this juncture, therefore, is whether the Commission has the authority to adjudicate this controversy. It is axiomatic that an administrative agency possesses only those powers expressly delegated to it by the Legislature or fairly implied from the legislative conferral of authority. Chopper Express, Inc. v. Department of Insurance, 293 N.J.Super. 536, 542, 681 A.2d 1226 (App.Div.1996). Without an adequate basis in statute, no administrative agency possesses inherent subject matter power.
It is equally fundamental that
powers expressly granted to an administrative agency should be liberally construed so that the agency can fulfill the Legislature's purpose, Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 70, 494 A.2d 804 (1985), and that an agency's express authority is augmented by such incidental authority as may be reasonably necessary or appropriate to effectuate the expressly delegated authority, New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978).
[In re Solid Waste Utility Customer Lists, 106 N.J. 508, 516, 524 A.2d 386 (1987).]
See also In re Loans of N.J. Property Liability Ins. Guar. Ass'n, 124 N.J. 69, 79, 590 A.2d 210 (1991); In re Valley Road Sewerage Co., 295 N.J.Super. 278, 288, 685 A.2d 11 (App.Div.1996), aff'd, 154 N.J. 224, 712 A.2d 653 (1998).
In Heaton v. State Health Benefits Comm'n, 264 N.J.Super. 141, 624 A.2d 69 (App.Div.1993), while noting that "[w]e are not hostile to the notion of necessarily implied administrative powers," we expressed doubt about this "Commission's adjudicatory authority over health insurance coverage disputes." Id. at 153, 624 A.2d 69. In Burley v. Prudential Ins. Co., 251 N.J.Super. 493, 499-500, 598 A.2d 936 (App.Div.1991), however, we held the absence of express authority to treat a coverage claim as a contested case not to preclude application of that process by the Commission.
In Heaton, our reservation concerning the Commission's adjudicatory role in coverage disputes was based primarily upon the absence of any source in statute or regulation from which authority to exercise such a function could be fairly inferred. We observed:
The statutory provision governing coverages contains a number of references to the Commission. The principal one relates to major medical expense benefits, and is found in N.J.S.A. 52:14-17.29(A)(2):
The commission may, by regulation, determine what types of services and supplies shall be included as "eligible medical services" under the major medical expense benefits coverage as well as those which shall be excluded from or limited under such coverage.

*362 The Commission has adopted regulations, N.J.A.C. 17:9-1.1 to -7.4, but they may be searched in vain for any substantive reference to what is included, excluded or limited under the major medical expense benefit coverage. Both the statute and the regulations may also be searched in vain for any reference to authority conferred on the Commission to adjudicate disputes arising out of denials by Prudential of major medical expense claims. The authority may be contained in the Commission's contract with Prudential, which is not part of the record. However, that contract is not a regulation and was not adopted according to the Administrative Procedure Act. N.J.S.A. 52:14-4.
[Heaton, supra, 264 N.J.Super. at 152-53, 624 A.2d 69.]
See also Chopper, supra, 293 N.J.Super. 536, 681 A.2d 1226.
In this case, to the contrary, we are faced with a detailed statutory scheme establishing the standards for local government enrollment in the Plan, N.J.S.A. 52:14-17.35 to -17.45, and regulatory provisions implementing qualification, participation and withdrawal, N.J.A.C. 17:9-1.1 to -9.9. Thus, the basic characteristics of this controversy are materially different from those which flavored the issues in Heaton and Chopper. This case does not involve the adjudication of a disputesuch as one raising coverage or premium issues between a carrier and an insuredin the absence of any legislative expression of authority to consider such matters. Rather, we are here concerned with the interpretation and application of statutes and regulations governing a program the administration of which has been expressly delegated to the Commission by the Legislature. We note also that, to a limited extent, this matter entails the exercise of decisional authority resembling a declaratory ruling under the Administrative Procedure Act, N.J.S.A. 52:14B-8, a function clearly reposed in the agency whose rules are implicated.
This matter has all the characteristics of a typical contested case:
[T]o determine whether a dispute is a contested case, there are three questions which must be answered affirmatively. First, is a hearing required by statute or constitutional provision; second, will the hearing result in an adjudication concerning rights, duties, obligations, privileges, benefits or other legal relations; and third, does the hearing involve specific parties rather than a large segment of the public?
[37 New Jersey Practice, Administrative Law and Practice § 119, at 137 (Steven L. Lefelt) (1988).]
Clearly, as a matter of law, a trial-type hearing is required in this case. A substantial sum is involved and facts, even if undisputed, must be evaluated for a determination whether there has been substantial compliance with statutory and regulatory requirements governing withdrawal from the Plan; or whether, for any other reason, the Commission's claim may be seen to be without adequate basis. We do not exclude the possibility that there may even be an issue as to the amount claimed. In determining the appropriate forum in which such a hearing should be held, principles of primary jurisdiction and exhaustion of administrative remedies require the matter to be adjudicated in the first instance by the agency invested with subject matter jurisdiction. Boss v. Rockland Electric Co., 95 N.J. 33, 42, 468 A.2d 1055 (1983) ("Courts should be sensitive to purported legal claims that are really regulatory issues and should be referred to the agency.")
The safeguards interposed by the Administrative Procedure Act are adequate to assure the Board that full and fair consideration will ensue. The administrative law judge assigned to the case will preside over it with the usual independence, will evaluate all the evidence produced impartially, and will objectively rule upon all appropriate issues in an initial decision of the customary depth and detail. See N.J.S.A. 52:14B-10. The Commission, also governed by general precepts of fairness and procedural and substantive regularity, as well as those embodied in the Administrative Procedure Act, will review that initial decision and adopt, reject or modify it for good reason adequately articulated. See N.J.S.A. 52:14B-10(d). In the event the Board is aggrieved by the agency's final decision, *363 judicial review will be available in the Appellate Division, R. 2:2-3(a)(2), based upon the full record developed in the contested case.
Affirmed.