753 A.2d 1231 (2000)
332 N.J. Super. 547
Brian KNIGHT, Plaintiff-Appellant,
v.
CITY OF HOBOKEN RENT LEVELING & STABILIZATION BOARD and Sergio Sciancalepore, Defendants-Respondents.
Victoria Mazur, Plaintiff-Appellant,
v.
City of Hoboken Rent Leveling & Stabilization Board, Brigite Corporation and Walter Sems, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted June 7, 2000.
Decided July 13, 2000.
*1232 Cathy C. Cardillo, for plaintiffs-appellants.
Murray, Murray & Corrigan, for defendant-respondent City of Hoboken Rent Leveling and Stabilization Board (Linda Sabat, of counsel; Jennifer Leigh Barnes, Jersey City, on the brief).
Perfilio & Marquet, Hoboken, for defendant-respondent Sergio Sciancalepore (Joseph P. Perfilio, of counsel and on the brief).
Irwin D. Tubman, New York City, for defendant-respondent Walter Sems and Brigite Corporation (Todd D. Muhlstock, of counsel and on the brief).
Before Judges KESTIN, WEFING and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
In separate complaints in lieu of prerogative writs challenging a common element of individual rulings by the City of Hoboken Rent Leveling and Stabilization Board, Brian Knight and Victoria Mazur seek declaratory judgments that Board regulation 18:54(B) is "ultra vires and hence, null and void." The regulation, inter alia, establishes a two-year time limitation governing a tenant's right to receive a refund on rent overcharges determined by the Board to have been made. It provides:
The Rent Leveling Administrator and the Rent Leveling and Stabilization Board shall not hear, consider or adjudicate applications of landlords or tenants which are not filed with the Rent Leveling office within two years of the time that the cause for these actions arises *1233 for relief under the following Ordinance provisions:
(a) applications for the establishment of rental rebates as a result of legal rent calculations pursuant to Section 18:54(A); the limitations period applied under this sub-section shall commence with the date of payment of the initial rent payment by the tenant applying for the rebate determination;
(b) applications for rental surcharges for capital improvements pursuant to Section 18:54(F); the limitations period applied under this sub-section shall commence with the date of completion of the work for which the application is filed;
(c) applications for rent reductions due to a decline in services, care or maintenance, pursuant to Section 18:54(H)[.]
The complaints seek remands to the Board to calculate and assess the respective rent overcharges due each plaintiff pursuant to the City's rent control ordinance, irrespective of the time bar contained in the regulation.
The two matters were consolidated and were decided together in the Law Division on cross-motions for summary judgment. After consideration on the papers, the trial court granted defendants' motions and denied plaintiffs' motions, dismissing the complaints for reasons expressed in an oral opinion. Plaintiffs appeal. We hold the regulatory time limitation provision at issue to be invalid, and reverse and remand to the Board for further proceedings in each case.
The issue presented to us, as it was framed for the trial court, is a narrow question of law. What little has been provided by way of factual background is contained primarily in the statements of material facts filed, pursuant to R. 4:46-2, by the Board and Knight's landlord, Sergio Sciancalepore, in connection with the summary judgment motions in the trial court.
As to Knight, the Board determined he had been overcharged $25 per month, but the duration of the overcharge is unclear. Knight has resided in his apartment since October 1991, when he "assumed" his sister's tenancy as she vacated the apartment. He never advised the landlord of the change and paid the rent via money orders bearing only his last name. Sciancalepore did not become aware of the change in occupancy until May 1998. When he discovered the subterfuge, he presented Knight with a new lease providing for an increased rental. Knight's application for a rent calculation followed. The Board determined that, even in those circumstances which had deprived the landlord of an opportunity to apply for vacancy decontrol relief upon the departure of Knight's sister, Knight qualified for an overcharge determination. It declined, however, on the basis of the challenged time bar, to assess a refund or credit for the overcharges.
Mazur has resided in her apartment since November 1985. We are unaware of the amount of the overcharge to her, but the record indicates that its duration has been found to be for the entire period of her occupancy. The Board also declined to assess a refund or credit for her benefit because of the regulatory time bar.
The Board and its administrator, the Rent Regulation Officer, were created and empowered by ordinance, Hoboken Municipal Code §§ 155-18 to -23. § 155-19 of the Code authorizes the Board, inter alia,
A. To issue and promulgate such rules and regulations as it deems necessary to implement the purposes of this chapter, which rules and regulations shall have the force of law until revised, repealed or amended from time to time by the Board in the exercise of its discretion, provided that such rules are filed with the Municipal Clerk.
Thus, the very language of the empowering ordinance limits the scope of the Board's rule- or regulation-adopting authority to the scope and terms of the enabling ordinance itself which, in its "General *1234 Regulations" subdivision, § 155-4, declares:
All rents for rental of housing space and services in dwellings to which this act is applicable are hereby controlled at the base rent level received by the landlord as of January 11, 1973, and no rental increases shall be hereinafter demanded, paid or accepted, except as provided in this chapter. Any rent increases imposed after January 11, 1973, the date of expiration of federal rent controls, to the extent that such increase(s) is in excess of that to which this is an amendment, are hereby declared to be null and void, and such excess rent shall be refunded or credited to the tenant by the landlord forthwith. (emphasis supplied)
The limitation in § 155-19 is very much in keeping with general principles of administrative law which confine an agency's rule-making authority only to that which, on a fair understanding of the enabling legislation, can be seen to be within the scope of a legislative delegation of power attended by adequate standards. In re Health Care Admin. Bd., 83 N.J. 67, 82, 415 A.2d 1147 (1980) (recognizing that regulations must be within the scope of the delegated authority); Avant v. Clifford, 67 N.J. 496, 553, 341 A.2d 629 (1975) (describing the need for standards, be they express or implied, to rein in the exercise of administrative discretion); In re Route 206, 322 N.J.Super. 345, 352, 731 A.2d 56 (App.Div.1999) (noting that a reviewing court should ascertain the fair contemplation of an enabling statute in order to determine the scope of authority delegated thereby); E.I. du Pont de Nemours and Co. v. Department of Envtl. Protection and Energy, 283 N.J.Super. 331, 340, 661 A.2d 1314 (App.Div.1995) (stating that agency action cannot run contrary to the terms of the enabling statute).
No administrative agency has inherent power, and none may arrogate to itself the authority to accomplish ends not envisaged by the legislative grant or to employ means not fairly within the powers that have been bestowed. Board of Educ. v. State Health Benefits Comm'n, 314 N.J.Super. 486, 492-93, 715 A.2d 358 (App.Div.1998). Even with the usual indulgence in favor of an agency's exercise, so as not to frustrate its efforts "to accomplish its statutory responsibilities," see Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978), the well-established presumption of validity that attends administrative agency action cannot be employed as a means for validating an exercise of authority that has no provenance in the enabling legislation. Since this concept, so basic as to qualify as a maxim of administrative law, applies even to state administrative agency exercises, see Medical Soc'y v. Department of Law and Public Safety, 120 N.J. 18, 25, 575 A.2d 1348 (1990)(the presumption of validity is applicable only "if the regulation is within the authority delegated to the agency"), there can be no question that it controls at least as comprehensively the manner in which municipal administrative bodies act. See Park Tower Apartments v. Bayonne, 185 N.J.Super. 211, 225, 447 A.2d 1359 (Law Div.1982)(a municipal board must exercise its powers "in strict conformity with the [governing] ordinance").
On its face, regulation 18:54(B), negates a tenant's right to realize the recoupment established as an entitlement in § 155-4 of the Municipal Code. The Board contends that the regulation merely implements the Hoboken rent control ordinance. Plaintiffs argue that it substantively alters the ordinance and thwarts its intent. As with any legislation, the key to the ordinance's intent lies in the plain language used therein. Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976). § 155-4 clearly establishes, without condition, a tenant's right to a refund or a credit whenever a finding has been made that rents exceeding permitted limits have been charged.
*1235 Neither of the two rationales articulated in support of the regulation is adequate to justify the Board's promulgation of a significant limiting condition on a right which the empowering ordinance grants unconditionally. In the absence of an appropriate delegation of authority by ordinance, attended by adequate standards, the Board as an administrative body simply lacks power to make the inherently legislative judgment framed in one preamble to the regulation that "the imposition of large increases and decreases in the amount of monies available to the landlord or tenant as the result of ... the Ordinance could work severe equitable hardships on the parties involved."
Equally unavailing as a validating rationale is the justification in another preamble that "the availability of information necessary to prove or dispute claims for various forms of relief under the provisions of the Rent Leveling and Stabilization Ordinance are [sic] diminished over an extended period of time after the inception of the cause for a claim." The ordinance itself explicitly requires that landlords file a registration statement every year disclosing, inter alia, "the current rent for each apartment; the amount of the last increase for each apartment unit; the date of the last increase for each apartment unit; [and] the date of lease expiration for each apartment unit." § 155-30(A). The ordinance also directs the Board to "supply information and assistance to landlords and tenants to help them comply with the provision [sic] of this chapter." § 155-19.B. Manifestly, therefore, there can be no validity in the basis offered, grounded as it is upon the limited availability of records the Board is obliged by ordinance to receive, keep, use and provide; thus subverting clear requirements of the enabling legislation. See In re Freshwater Wetlands Rules, 238 N.J.Super. 516, 526, 570 A.2d 435 (App.Div.1989).
Collins v. Albro, 296 N.J.Super. 191, 686 A.2d 765 (App.Div.1996), certif. den'd, 149 N.J. 408, 694 A.2d 193 (1997), relied upon by the Board, is inapposite. Collins held that a limitations period enacted as part of the governing ordinance was sustainable. Id. at 193, 686 A.2d 765. We are confronted here with a different question: whether a municipal administrative body by regulation may validly depart from the clear intendment of its enabling ordinance.
Plaintiffs have relied on Metromedia, Inc. v. Division of Taxation, 97 N.J. 313, 328, 478 A.2d 742 (1984) to support their arguments. That case is inapposite. It announced a six-pronged test for deciding whether agency action must be taken by a rulemaking as distinguished from an administrative adjudication. Id. at 331-32, 478 A.2d 742. Under the test articulated, ibid., the determinations embodied in regulation 18:54(B), if they were to be made at all on the administrative level, unquestionably required a rulemaking. However, that is not the issue in this appeal. The Metromedia test has no bearing upon whether an agency's rulemaking action was within the scope of the authority delegated to it. Moreover, there is no contention here that regulation 18:54(B) was improperly promulgated in a procedural sense, only that it was beyond the Board's delegated authority.
The remaining issues in the matter need not detain us. The Board argues that if the regulation is held invalid, that determination should be given prospective effect only. We have been given no good reason why plaintiffs or others similarly situated should not receive the relief established in the ordinance because the Board exceeded its powers in affixing an unauthorized time limitation.
The arguments of defendant landlords that plaintiffs' claims are barred by the doctrine of laches is meritless. Laches is a tool designed to promote equity. No equitable purpose is served by permitting a party to retain a benefit which, by the prevailing legislative standard (here, the ordinance), he had no right to receive from the outset.
*1236 We hold that the regulatory time limitation governing tenant eligibility to receive the refunds or credits provided in the ordinance is invalid. Accordingly, the trial court's grant of summary judgment to defendants, dismissing the consolidated complaints, is reversed. Summary judgment is, instead, granted to plaintiffs on the narrow question of law presented. The matters are remanded to the Hoboken Rent Leveling and Stabilization Board for the processing of plaintiffs' applications for relief under the ordinance without reference to the invalid time limitation. We make no determination that either plaintiff is otherwise entitled to the relief sought.