20 A.3d 442 (2011)
420 N.J. Super. 215
Amy RYAN, Plaintiff-Respondent/Cross-Appellant,
v.
GINA MARIE, L.L.C., Defendant/Third-Party Plaintiff-Appellant/Cross-Respondent,
v.
608 Madison Street, L.L.C., Third-Party Defendant-Respondent, and
Raymond Feurtado and Vincent T. Romano, Third-Party Defendants.
Amy Ryan, Plaintiff/Cross-Appellant,
v.
Hoboken Rent Leveling & Stabilization Board and Gina Marie, L.L.C., Defendants/Cross-Respondents.
No. A-1342-09T3
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2011.
Decided June 7, 2011.
*443 Charles X. Gormally argued the cause for appellant/cross-respondent Gina Marie, L.L.C. (Brach Eichler, L.L.C., attorneys; Mr. Gormally, of counsel; Mr. Gormally and Sean A. Smith, on the brief).
Cathy C. Cardillo argued the cause for respondent/cross-appellant Amy Ryan.
James J. Horan, West Orange, argued the cause for respondent 608 Madison Street, L.L.C. (Mautone & Horan, P.A., attorneys; Mr. Horan>, of counsel and on the brief).
Before Judges WEFING, BAXTER and KOBLITZ.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff is a tenant in a multi-unit building in Hoboken that is owned by defendant Gina Marie, L.L.C. ("Gina Marie"). Plaintiff secured her apartment with the *444 assistance of a Hoboken real estate broker and has resided there since October 1993. Her initial rent when she took up occupancy was $650 per month. There is no indication in the record that plaintiff received any increase in her rent until defendant Gina Marie purchased the building in 2005.
Plaintiff has had a number of landlords over the years. Defendant has only owned the building since December 2005, purchasing it from third-party defendant 608 Madison Street, L.L.C. ("608").[1] Prior to purchasing this building, Gina Marie had owned other properties in Hoboken and knew that the city had a rent control ordinance. We are informed that certain of the earlier contracts of sale for this property contained indemnification provisions under which the seller indemnified the purchaser with respect to the correctness of the building's rent roll. The contract between Gina Marie and 608 did not contain such indemnification language. Rather, an addendum to the contract of sale between Gina Marie and 608 included the following provision:
10. The buyer shall have ten (10) days from the end of attorney review to conduct its own due diligence as to the legality of the rents. Buyer and seller agree the seller makes no representations as to the legality of the rent and the buyer agrees to buy the property in its rents [sic] in an as is condition with any faults or illegalities. The rents are taken by the buyer without any recourse against the seller from the date of closing forward. This paragraph shall survive the closing of title.
Gina Marie's purpose in purchasing this building was to convert it from a rental property to a condominium, with an anticipation of earning a profit on the sale of the condominium units within the building. The contract addendum thus required as a condition of closing that at least six units be vacant.
According to a certification submitted by Gina Marie's principal, she went to the office of the Hoboken Rent Leveling and Stabilization Board ("the Board") to review its files in an effort to determine whether the tenants in the building were being charged a legal rent. She noted in her certification that she was familiar with the terms and procedures of the Hoboken rent control ordinance. She further certified that the administrator of the Board informed her that a prospective purchaser of a property was not entitled to receive an official calculation of legal rents for a subject property. Based upon that information, and her familiarity with the Hoboken ordinance, she performed her own calculations to determine whether the rents being charged the tenants in this building conformed to the Hoboken ordinance. Having satisfied herself that the rents were appropriate, she proceeded to close the transaction.
After Gina Marie assumed ownership of the building, plaintiff was notified that her rent would be $758 per month. Plaintiff disputed that amount and requested an official calculation from the Hoboken Board. In February 2008, the Board notified defendant that it had calculated plaintiff's legal base rent to be $289 per month. It urged the parties to come to an agreement with respect to how plaintiff would be reimbursed for the overage, whether through refund or credit.
The Board's urging was in vain. In March 2008, plaintiff filed a complaint, docket number L-1290-08, in the Law Division seeking a refund of the excess rent she had paid during the course of her *445 entire tenancy and damages under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -195. She also exercised the right of self-help contained within the Hoboken ordinance and elected to cease paying rent, charging her rent to the accumulated refund to which she said she was entitled. From that point forward, the procedural history may generously be described as convoluted, and we attempt to summarize its salient points.
Gina Marie's attorney did not file a timely answer to this complaint, but on July 11, 2008, an order was entered permitting Gina Marie to file an answer and a third-party complaint, which was in fact filed on July 21, 2008. Gina Marie named its direct predecessor, 608, as a third-party defendant, together with certain of 608's predecessors. Despite naming these additional parties, Gina Marie's original attorney did not properly attend to service upon them with the result that, with the exception of 608, Gina Marie's third-party claims were later dismissed for lack of prosecution. R. 1:13-7(a). 608, in turn, filed cross-claims against its predecessors in title, including plaintiff's original landlords and others in the chain of title.
On July 14, 2008, three days after Gina Marie was granted leave to file its pleadings, and before it had done so, an order was entered in the trial court that granted what it referred to as plaintiff's motion for "default/summary judgment" and entered partial judgment against Gina Marie for excess rents paid by plaintiff as well as treble damages and counsel fees under the consumer fraud statute.
Gina Marie did not protest the entry of this order. It did, however, file an administrative appeal with the Board. Following a hearing, the Board adopted a resolution in September 2008 requiring Gina Marie to refund to plaintiff the excess rent paid "for the twelve (12) month period commencing from the date upon which ... [she] filed the request for a legal rent calculation." The letter accompanying this resolution interpreted it to mean that Gina Marie was obligated to refund any excess rent for the one-year period prior to plaintiff requesting an official rent calculation, that is, from January 2007, and referred to the Board basing its decision to limit plaintiff's damages to this one-year period upon N.J.S.A. 2C:1-6b(2), limiting the prosecution for a disorderly persons offense or petty disorderly persons offense to the one-year period after it was committed.
Plaintiff, dissatisfied with this resolution, filed a separate action in lieu of prerogative writs, naming Gina Marie and the Board as defendants. This action was assigned docket number L-4484-08. Eventually, the two matters were consolidated in December 2008. As part of that consolidated litigation, Gina Marie's principal submitted a certification in which she asserted that when she signed the contract of sale, she agreed to forego any claim against 608 with respect to excessive rents that might arise in the future but had not agreed to forego any claim Gina Marie might have with respect to rents collected in the past that had not been computed in accordance with the Hoboken rent control ordinance.
In connection with her motion to consolidate, plaintiff also sought summary judgment that the Board had improperly limited her claim for a refund of excess rent to the one-year period prior to her seeking an official rent calculation. The order granting consolidation also granted her summary judgment on this issue, finding the Board lacked the authority to impose such a limitation, and it remanded the matter to the Board "for the processing of Plaintiff's application for relief under the Ordinance *446 without reference to the invalid time limitation."
In March 2009, in response to the trial court's order, the Board passed another resolution that calculated plaintiff's legal base rent to be $289 per month for the period November 2007 through October 2008. Annexed to that resolution in defendant's appendix are sheets from the Board calculating plaintiff's rent from November 1981. According to these sheets, the correct base rent in 1993 when plaintiff moved into her apartment was $195 per month while she was charged was $650 per month. Those sheets do not indicate that plaintiff received any increase until notified in December 2005 that her rent in the future would be $758 per month.
Plaintiff calculated that she had paid approximately $78,000 more in rent than she should have under the Hoboken ordinance, and she sought to recover that entire amount from the present owner, Gina Marie. The Board never made a formal calculation of what amount of rent in excess of that which was permissible under the ordinance plaintiff had paid during the course of her tenancy.
One additional piece of litigation should be noted. After the Hoboken Board ordered a refund to plaintiff for the period November 2007 to October 2008, defendant Gina Marie filed an action in lieu of prerogative writs challenging that resolution, contending that the Board had arbitrarily departed from the practices it had routinely followed since the adoption of the rent control ordinance. That matter was assigned docket number L-2146-09. That action was ultimately dismissed, and we are informed that an appeal from that dismissal is pending in this court.
Having set forth certain of the procedural oddities, we also note that Gina Marie is no longer represented by its original attorney who has been disbarred. Although that attorney obtained leave to pursue third-party claims against Gina Marie's predecessors, as we have noted, he did not see to proper service on those predecessors in title, and those third-party claims were later dismissed.
The consolidated matter was ultimately resolved in the trial court through motion practice. Plaintiff moved for summary judgment against Gina Marie, Gina Marie moved for partial judgment, seeking to limit its liability to the period of its ownership, and 608 moved for summary judgment on Gina Marie's third party claim, contending the contractual language we set forth earlier relieved it of any liability. In addition, Gina Marie moved to vacate the dismissals previously granted to third-party defendants who had not been properly served and to amend its third-party complaint to add additional parties in the chain of title. Finally, plaintiff moved for summary judgment with respect to Gina Marie's separate prerogative writs action, docket number L-2146-09. Gina Marie filed these motions promptly upon the substitution of new counsel, and they were argued shortly thereafter.
After extensive argument, the trial court finally placed an oral decision on the record, setting forth its reasons for concluding that defendant Gina Marie was obligated for the total sum of overcharged rent that plaintiff had paid during her entire tenancy. Further, citing the contract language we set forth earlier, it granted summary judgment to 608 on Gina Marie's third-party complaint against it. In addition, it denied Gina Marie's application to revive its previously dismissed claims against those who had owned the building prior to 608. Based upon the order entered in July 2008 finding Gina Marie liable under the consumer fraud statute, the trial court awarded treble damages but limited the period of trebling to the time of *447 Gina Marie's ownership. Later, again under the consumer fraud statute, it awarded plaintiff counsel fees. It ultimately entered judgment against Gina Marie for $78,059.57 in excess rents, $27,225.52 in treble damages and counsel fees of $44,898.75, for a total judgment of $146,704.78. Gina Marie has appealed from that judgment and plaintiff has cross-appealed, contending that the trial court improperly limited the period for which she was entitled to treble damages and improperly reduced the award of counsel fees. Having reviewed the record in light of the contentions advanced by the parties on appeal, we have concluded that the judgment entered by the trial court must be reversed and the matter remanded for further proceedings.

I
The trial court analyzed plaintiff's motion for summary judgment against Gina Marie, and Gina Marie's cross-motion to limit its liability in terms of the language of the Hoboken rent control ordinance and certain case law arising under that ordinance, in particular, Knight v. Hoboken Rent Leveling & Stabilization Bd., 332 N.J.Super. 547, 753 A.2d 1231 (App. Div.2000), and an unpublished decision of this court, Cardillo v. Hoboken Rent Leveling & Stabilization Bd., No. A-0695-92T3 (App.Div. Apr. 7, 1994), certif. denied, 138 N.J. 263, 649 A.2d 1284 (1994).[2]
The plaintiffs in Knight, supra, were long-time tenants in apartments in Hoboken subject to the rent control ordinance. 332 N.J.Super. at 550, 753 A.2d 1231. After a period of years, each became aware that their landlords were charging rents beyond what was permissible under the ordinance, and each applied to the Hoboken Board for a refund under § 155-4 of the ordinance which provided at the time that such rental increases were "declared to be null and void, and such excess rent shall be refunded or credited to the tenant by the landlord forthwith." Id. at 551, 753 A.2d 1231. The Board limited the plaintiffs' refunds to a period of two years, in accordance with a regulation the Board had adopted creating a two-year limitations period. Id. at 549, 753 A.2d 1231. Relying on basic principles of administrative law, we set aside this regulation, finding that the Board lacked the authority to impose "a significant limiting condition on a right which the empowering ordinance grants unconditionally." Id. at 552, 753 A.2d 1231.
Additionally, we rejected the landlords' argument that plaintiffs' claims were barred by laches. We noted that "[l]aches is a tool designed to promote equity. No equitable purpose is served by permitting a party to retain a benefit which, by the prevailing legislative standard (here, the ordinance) he had no right to receive from the outset." Id. at 554, 753 A.2d 1231.
In Cardillo, supra, the plaintiff, after occupying her apartment for a period of time, questioned whether the rent she was being charged was computed in accordance with the ordinance, and she requested a determination of her legal base rent. After some period of time, the rent leveling officer informed her that her legal base rent was $475 a month and that she was entitled to a refund of $18,249. Her landlord *448 appealed to the full board which conducted a de novo hearing in which both her current landlord, and her three preceding landlords participated. Each of the relevant contracts of sale between the parties in the chain of title included express indemnification clauses with respect to the correctness of the rent rolls.
The Board determined the plaintiff's legal base rent to be $493.92 a month but, utilizing the doctrine of laches, ruled the plaintiff was only entitled to a refund from the time when she requested a formal calculation of her legal base rent. The plaintiff and her current landlord filed companion prerogative writs actions in the Law Division challenging this result, and her prior landlords were permitted to intervene. The trial court concluded that the plaintiff's refund claim was limited to the period six years prior to the issuance of the trial court's opinion.
All parties appealed to this court. Forecasting our later decision in Knight, supra, we held that the plaintiff's entitlement to a refund could not be barred by laches. In the course of reaching this conclusion we noted in particular that the plaintiff's current landlord had purchased the building with full knowledge of the plaintiff's claim and had acted to protect himself through the indemnification clause in the contract of sale. We rejected his argument that rent belongs to the landlord who collected it and that he should not be held liable to refund overcharges collected by prior landlords. We rejected that argument, noting that under the ordinance, the obligation to reimburse rests upon "the landlord" and the Board only had jurisdiction over the current landlord. We concluded the current landlord was liable for the entire amount but that he was entitled to proceed against his predecessor in title based upon the indemnification clause in his contract.
Here, the trial court adopted this final jurisdictional approach and held it had no authority to direct any reimbursement beyond defendant Gina Marie. We disagree, for several reasons.
The first, of course, is the fact that Cardillo is unpublished and is thus not precedent at all. R. 1:36-3. Further, the statement in Cardillo that the obligation of reimbursement rests "on the only landlord over whom the Board has jurisdiction, i.e., the current owner" disregards the fact that the prior owners had fully participated in the hearing conducted by the Board, as well as the subsequent litigants. They had thus submitted themselves to the Board's jurisdiction.
Further, we specifically noted that the current landlord had purchased the building with full knowledge of the plaintiff's claim. That is not the situation in the present matter.
Additionally, we perceive a significant procedural distinction between this matter and Cardillo. In Cardillo, following a hearing before the Board, the Board made a determination of an amount of rent that was due to be refunded or credited to the tenant, and we were reviewing the final action of an administrative board.
Here, on the other hand, the Hoboken Board never made a determination that plaintiff was entitled to a particular sum, and the Board was never called upon to make a decision as to which person or entity was liable to plaintiff. Finally, we are uncertain as to how the absence of prior owners from the proceedings before the Board can operate to limit Gina Marie's right to pursue a third-party claim in an action in the Law Division. Thus, even recognizing the limited worth of an unpublished opinion, we do not find its reasoning or approach persuasive in the context of this matter.

*449 II
The trial court also considered the parties' motions with respect to plaintiff's consumer fraud claims.[3] It properly followed our decision in Wozniak v. Pennella, 373 N.J.Super. 445, 862 A.2d 539 (App.Div. 2004), certif. denied, 183 N.J. 212, 871 A.2d 90 (2005), in which we clearly held that a landlord's violation of a municipality's rent control ordinance subjects the landlord to liability under the consumer fraud statute. Id. at 456, 862 A.2d 539. Moreover, the trial court noted that Gina Marie, after performing its own calculations of the permissible rent for this apartment sought to collect from plaintiff a monthly rent greater than what it had calculated was permissible. Defendant's actions were more than sufficient to trigger the Consumer Fraud Act.
The trial court further noted, however, that liability under the consumer fraud statute requires that there be a proximate link between the unlawful act and the consumer's loss. Cox v. Sears Roebuck & Co., 138 N.J. 2, 23, 647 A.2d 454 (1994). The trial court correctly recognized that the actions of Gina Marie could only be considered a proximate cause of plaintiff's loss for the period of its ownership of the building. The trial court thus properly limited plaintiff's entitlement to treble damages from Gina Marie to the period of time during which it owned the building and was plaintiff's landlord.

III
When the trial court took up 608's motion for summary judgment against Gina Marie, it first noted the legal principles governing construction of indemnification clauses. After reciting those principles, the trial court concluded it considered it clear
when examining the reasonably-certain meaning of the language used, taken as an entirety, considering the situation of the parties and the operative usages and practices coupled with the objects that the parties were striving to achieve, that the indemnification clause was indeed proper and thus [608] can have no liability [to Gina Marie].
It described as unreasonable the position put forth by Gina Marie's principal, that she understood under the contract that Gina Marie was assuming, back to the date of closing, the risk of a subsequent determination that the rents being collected did not comport with the Hoboken rent control ordinance and were to be rolled back, not the risk that rents could be ordered rolled back past the date of closing. Finding the contract's language clear and unambiguous, it granted 608's motion for summary judgment against Gina Marie.
We are unable to agree with the trial court's analysis with respect to this contractual provision. In particular, we do not agree that the language of the contract was clear and unambiguous. Rather, in our judgment, it is susceptible to several differing interpretations, and its meaning could not be concluded as a matter of law on a motion for summary judgment.
Further, in our judgment, the trial court was led astray by certain of the *450 earlier arguments put forth by counsel with respect to paragraph 10 of the addendum, when they framed certain of their arguments in terms of indemnification clauses. We do not perceive that this clause can fairly be construed as an indemnification clause; and if it were so intended, we concur with Gina Marie that the language lacks the clarity of intent required for such claim to be enforceable against it. Celanese Ltd. v. Essex Cty. Improvement Auth., 404 N.J.Super. 514, 529, 962 A.2d 591 (App.Div.2009) (recognizing that a contract purporting to indemnify an indemnitee against its own fault or negligence must so state in "unequivocal" terms). While a contract of indemnity should "be construed in accordance with the rules for construction of contracts generally," it should be "strictly construed against the indemnitee" if its meaning is ambiguous. Mantilla v. NC Mall Assocs., 167 N.J. 262, 272, 770 A.2d 1144 (2001) (citations omitted).
Because the language is ambiguous, and susceptible of several meanings, further proceedings are required to elucidate its meaning and the parties' intent.

IV
When the trial court turned to Gina Marie's motion to reinstate its previously dismissed claims and to amend its third-party complaint to add a party in the chain of title who had been omitted by the previous attorney, it noted that its decision was governed by Rule 1:13-7 and Rule 4:9-1, and the cases decided thereunder. The trial court denied the motions, finding that there would be prejudice to the remaining parties in light of the late filing of the motions. It noted, for example, that the matter had already received multiple trial dates that had been adjourned and that the discovery end date had passed. And, to the extent that Gina Marie sought to amend its third-party complaint to add 608 Madison, L.L.C., in contrast to the named party 608 Madison Street, L.L.C., it found the amendment would be futile in light of its interpretation of paragraph 10 of the addendum to the contract of sale.
We have, however, concluded that the trial court's ruling as a matter of law interpreting the contract between Gina Marie and 608 was incorrect. We have also concluded that the absence of plaintiff's prior landlords from proceedings before the Board does not deprive defendant of the opportunity to seek contribution from those landlords who collected excessive rents over an extended period of time. Indeed, to permit those landlords to retain those funds improperly collected would be to reward them for their disregard of the ordinance and its requirements. We do not consider it good policy to foster such a result.

V
With regard to plaintiff's motion for summary judgment, contending the Board had exceeded the scope of the remand order when it held a new hearing with respect to plaintiff's legal base rent and her refund claim, the trial court denied that motion. It noted the language of its prior order that had set aside the one-year limitation on the plaintiff's refund and remanded the matter "to the Board for the processing of Plaintiff's application." It concluded that the Board's interpretation of this order, which was based upon the fact that the matter was remanded to the Board as opposed to the administrator for a ministerial calculation, was reasonable. It therefore could not consider the Board's action arbitrary, particularly in light of the deference generally afforded to the decisions of local administrative boards.

*451 VI
The trial court's final ruling with respect to these accumulated motions was to deny plaintiff's motion to dismiss Gina Marie's prerogative writs action under docket number L-2146-09. As we noted earlier, that matter was later dismissed on other grounds, and an appeal is pending from that dismissal. We thus decline to address the matter further.

VII
Following the trial court's decisions as we have set them forth, plaintiff filed a motion for counsel fees in light of the finding in her favor under the consumer fraud statute. Plaintiff sought counsel fees of $62,259.75 for the work performed by her attorney, based upon 276.71 hours of work at an hourly rate of $225. Without explanation, the trial court reduced the hours to 198.38 and awarded a fee of $44,617.50.
The trial court failed to state its reasons for reducing the amount of hours it considered compensable. It also reduced the lodestar amount due to plaintiff having achieved limited success on the consumer fraud claim, but it did not explain the decrease it made. Further, it made no findings with respect to defendant's claim that plaintiff was seeking an award of counsel fees under the consumer fraud statute for hours expended furthering claims that were not related to the consumer fraud statute. We are thus unable to conduct a meaningful review of the award of counsel fees, which both parties have challenged, plaintiff saying it is inadequate, defendant that it is excessive. We thus are compelled to reverse the award and remand the matter to the trial court for further consideration and explication.
Reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] There is an indication in the record that the correct name of the entity is 608 Madison, L.L.C., but the distinction is not material to the issues on appeal.
[2] We recognize that in In re Alleged Improper Practice, 194 N.J. 314, 330, n. 10, 944 A.2d 611 (2008), the Supreme Court stated that "no unpublished decision shall be cited by any court." (quoting R. 1:36-3). In the context of this matter, in which plaintiff and the trial court relied strongly on that unpublished opinion, it is not possible to avoid a discussion of it to demonstrate why we are satisfied that plaintiff and the trial court misapprehend it.
[3] We note for the sake of completeness that we disagree with plaintiff and the trial court that the question of defendant's liability under the consumer fraud statute was settled by the entry of the order of July 14, 2008. That order was entered by a judge other than the judge who ultimately handled the dispositive motions and the second judge refused Gina Marie's argument that it was entitled to have that order reconsidered. As we noted earlier, the order of July 14, 2008, was entered three days after Gina Marie was permitted to file responsive pleadings but before it had done so. The procedural anomaly is not material in light of our conclusion that the result was, ultimately, legally correct.