**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2090-17T1

STATE TROOPERS FRATERNAL
ASSOCIATION OF NEW JERSEY,
STATE TROOPERS NON-
COMMISSIONED OFFICERS
ASSOCIATION OF NEW JERSEY,
STATE TROOPERS SUPERIOR
OFFICERS ASSOCIATION,
RICHARD POKORNY, THOMAS
DECKER, BRIAN ZAMROCK,
JOHN SCALABRINI, FABIAN
GERKE, and all other persons
similarly situated,

      Petitioners-Appellants,

v.

STATE POLICE RETIREMENT
BOARD,

      Respondent-Respondent.

_____

      Argued May 21, 2019 – Decided July 5, 2019

      Before Judges Suter and Geiger.

      On appeal from the Board of Trustees of the State
      Police Retirement System, SPRS No. 8-10-004653.

Lauren P. Sandy argued the cause for appellants.

Robert E. Kelly, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Robert E. Kelly, on the brief).

PER CURIAM

Appellants are three labor unions, five named members of those unions, and all other persons similarly situated. They appeal from a final agency decision of respondent Board of Trustees (the Board) of the State Police Retirement System (SPRS) denying the transferability of certain prior non-SPRS service credit. For the following reasons, we affirm.

New Jersey State Troopers Richard Pokorny, Thomas Decker, Brian Zamrock, John Scalabrini, and Fabian Gerke (collectively the five named members) were all members of the Police and Fireman's Retirement System (PFRS) before enrolling in the SPRS. Prior to becoming a State Trooper in 1993, Pokorny was employed as a detective by the Ocean County Prosecutor's Office for three years and eight months. Decker was employed by the New Jersey Department of Corrections for two years and ten months prior to becoming a State Trooper in 1987. Zamrock was employed by the New Jersey Division of Criminal Justice (DCJ) as a State Investigator for four years and six

2

months prior to becoming a State Trooper in 2003. Scalabrini was employed by the DCJ as a State Investigator for five years and three months before becoming a State Trooper in 2004. Gerke was employed by the DCJ as a State Investigator for three years prior to becoming a State Trooper in 2003. None of these five named members had a break in service when they became State Troopers.

We begin with an overview of the relevant statutory framework. The SPRS was created in 1965 to "provide retirement allowances and other benefits for its members and their beneficiaries." N.J.S.A. 53:5A-4. Prior to 1997, SPRS membership was limited to: (1) members of the State Police Retirement and Benevolent Fund; (2) fulltime commissioned officers, noncommissioned officers, and troopers of the Division of State Police; and (3) persons employed in certain positions in the Division of Motor Vehicles who were appointed to the State Police in 1983. L. 1983, c. 403, §§ 37-38.

In 1997, the Legislature amended the statute to appoint persons in the following enumerated positions to the State Police: (1) Alcoholic Beverage Control Enforcement Bureau (ABC) inspectors; (2) State Capitol Police Force members; and (3) Bureau of Marine Law Enforcement officers who satisfied certain age, health, and performance criteria (collectively the 1997 appointees). L. 1997, c. 19, §§ 1, 7. The service credit earned by the 1997 appointees in the

3

PFRS or the Public Employees' Retirement System (PERS) was transferred to the SPRS.  L. 1997, c. 19, § 4.  To ensure the 1997 appointees and the SPRS would not be harmed by transfer, the 1997 amendments required the PFRS and PERS to remit the "accumulated deductions standing to the credit" of the 1997 appointees and "the pro-rata part of the reserve fund constituting the employer's obligations under the former system applicable" to the 1997 appointees' accounts.  L. 1997, c. 19, § 5.  The 1997 amendments also required the employers to contribute the amount of any deficiency to the SPRS, if the amount remitted pursuant to L. 1997, c. 19, § 5 was "less than the total" needed by the SPRS to provide the 1997 appointees "with credit for [their] public service."  L. 1997, c. 19, § 6.

The Legislature also added the following language to N.J.S.A. 53:5A-6(a):

> In addition, service as a member of the State Capitol Police Force, or as a Supervising Inspector, Principal Inspector, Senior Inspector, or Inspector Recruit in the [ABC] or as a Principal Marine Law Enforcement Officer, Senior Marine Law Enforcement Officer, or Marine Law Enforcement Officer in the Bureau of Marine Law Enforcement and service credit transferred from [the PFRS] or [PERS] shall, if the required contributions are made by the State and the member, be considered as creditable service.
>
> [L. 1997, c. 19, § 8.]

A-2090-17T1

The Assembly's Committee's Statement makes clear that the transfer of service credit from the PFRS and PERS to the SPRS was limited to the 1997 appointees:

> For persons becoming members of the State Police under the bill, their service credit in [PERS] or [PFRS] as an alcoholic beverage control inspector, State Capitol Police Force member, or marine law enforcement office[r] shall be transferred to the SPRS. Any other service credit established in PERS or PFRS shall be included in the computation of an SPRS retirement allowance on the basis of 1% of final compensation for each year of such service credit . . . .
>
> [Assemb. Comm. Statement to A. 1451 2 (June 10, 1996).]

The Legislature expressly contemplated "that 162 persons ([twenty-four] ABC inspectors, 134 Marine Police officers and [four] State Capitol police officers) would be eligible to transfer to the . . . State Police" under the 1997 Amendments and "that 115, or approximately [seventy] percent, of these persons would qualify to transfer to the State Police" under the 1997 Amendments. S. Comm. Statement to A. 1451 2 (Nov. 25, 1996). Of those 162, the Office of Legislative Services (OLS) estimated "115, or approximately seventy percent, of these persons would qualify to transfer." Ibid. The OLS estimated "the total additional pension cost to the State in the first year following enactment would be $835,181" for those 115 employees. Ibid.

5

In January 2015, the Unions petitioned the Board on behalf of five named members and "all other similarly situated troopers." These individuals did not claim to be among the 1997 appointees. Relying on our unpublished opinion in LaRosa v. State Police Ret. Sys., No. A-0927-12 (Sept. 27, 2013),[1] appellants claimed the Union members' creditable service in the PFRS should be treated as transferred credit in the SPRS. The Unions subsequently submitted "a formal request for compliance with N.J.S.A. 53:5A-6(a)" and LaRosa.

The Board denied the petition, "determin[ing] that only service credit transferred in from specific titles was eligible to be included as creditable service." In reaching that conclusion, the Board distinguished the facts presented in the unpublished opinion relied upon by appellants, which involved employees who previously held titles "specifically enumerated" in the 1997 amendments. The Board further determined that "a plain reading of [N.J.S.A. 53:5A-6(b)] does not lead to the conclusion that all transferred service credit is to be treated similarly for all employees."

---

[1] "No unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3. Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." Trinity Cemetery v. Wall Twp., 170 N.J. 39, 48 (2001) (Verniero, J., concurring).

A-2090-17T1

The Unions appealed from the Board's decision. The appeal was transmitted to the Office of Administrative Law for hearing as a contested case and assigned to an Administrative Law Judge (ALJ). The parties cross-moved for summary decision pursuant to N.J.A.C. 1:1-12.5.[2] Following oral argument, the ALJ issued an Initial Decision on October 6, 2017.

The ALJ concluded summary decision was appropriate because there were no material facts in dispute. The ALJ stated "[t]he sole issue is interpretation of N.J.S.A. 53:5A-6 as it applies to the undisputed facts."

The ALJ focused on "whether subsection (a) or subsection (b) of N.J.S.A. 53:5A-6 should apply to petitioners' service previously rendered in the PFRS." The ALJ noted subsection (a) "enumerates positions within specific agencies and provides that time served within those positions qualifies as full creditable service within the SPRS." In turn, the ALJ noted subsection (b) provided for prior service credit in the PFRS or PERS "is to be included in calculating a SPRS member's retirement allowance at a rate of one percent of final compensation for each year of service in those systems, unless otherwise stated in the statute."

---

[2] Pursuant to N.J.A.C. 1:1-12.5(b), summary decision "may be rendered if the papers and discovery which have been filed, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."

A-2090-17T1

The ALJ rejected the argument that any time served in the PFRS or PERS should be given full value and concluded that "if all service rendered in the PFRS or PERS was meant to translate into full creditable service within the SPRS, there would be no need to enumerate specific agencies or titles within the statute. Accepting [appellants'] interpretation would render the lists of agencies and titles superfluous."

The ALJ found appellants' reliance on LaRosa misplaced because the employees in LaRosa held titles "specifically enumerated" in subsection (a), whereas here, appellants did not "transfer[] into the SPRS from a position enumerated in subsection (a)."

The ALJ rejected the argument subsection (b) was "inapplicable because it only applie[d] to service credit that ha[d] been purchased, meaning unworked time on a leave of absence without pay, not service credit that has been transferred." The ALJ concluded appellants' interpretation of subsection (b) was "undermined by the language" of subsection (f). The ALJ explained:

> Subsection (f) states that individuals who become SPRS members pursuant to the 1997 amendments and are required to retire at age fifty-five with less than twenty years of SPRS credit, may use "service credit transferred or purchased pursuant to subsection b" to attain the requisite twenty years. Subsection (f) also indicates that, for the 1997 appointees, "[t]ransferred or purchased service credit in excess of the amount

A-2090-17T1

necessary to provide 20 years of creditable service in the retirement system shall be included in the computation of a retirement allowance on the basis provided in subsection b." Again, this language suggests that subsection (b) can apply to both transferred or purchased service credit from another retirement system.

The ALJ also found the legislative history of N.J.S.A. 53:5A-6 supported the Board's position, noting the 1997 amendment provided that service credit transferred from the PFRS or the PERS in the enumerated titles "would constitute creditable service in the SPRS." The ALJ also noted the Assembly State Government Committee's Statement to Assembly Bill 1451 "indicates that service credit established in specific, enumerated PERS and PFRS positions would transfer to the SPRS. However any other service credit established in other retirement systems was meant to be treated differently for purposes of calculating retirement allowances."

Based on this analysis, the ALJ granted the Board's motion for summary decision and found that PERS or PFRS credit transferred into the SPRS is not credited at full value unless the service was attributable to one of the enumerated titles. The ALJ concluded subsection (b) "is the appropriate subsection for calculating [the] retirement allowance for previous creditable service in the

9

PERS and PFRS under non-enumerated titles." Appellants and the Board each filed exceptions to the Initial Decision.

The Board adopted the ALJ's Initial Decision, determining that "N.J.S.A. 53:5A-6(a) and (b) [do] not provide for the transfer of previously earned PFRS service to a member's SPRS account on a full SPRS value for any individual[s] becoming members of the SPRS other than those who transferred into SPRS in 1997 and occupied one of the positions enumerated in the statute." This appeal followed.

Appellants argue:

> POINT I
> THE DECISION OF THE STATE POLICE RETIREMENT BOARD DID NOT FOLLOW THE LAW AND THEREFORE SHOULD BE REVERSED.
>
> POINT II
> THE BOARD'S DECISION DID NOT FOLLOW THIS COURT'S DECISION IN LAROSA AND THEREFORE SHOULD BE REVERSED BECAUSE IT IS ARBITRARY AND CAPRICIOUS.
>
> POINT III
> THE DECISION OF THE BOARD VIOLATES THE PUBLIC POLICY TO CONSTRUE PENSION STATUTES LIBERALLY, AND THEREFORE, SHOULD BE REVERSED. (Not Raised Below).

Appellate courts serve a "limited role" in reviewing administrative agency decisions. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway

State Prison, 81 N.J. 571, 579 (1980)).  We will not overturn an agency decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)).  When undertaking that analysis, a reviewing court must scrutinize:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We do not substitute our own judgment for an agency's, even if we might have reached a different result.  Ibid. In addition, courts generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing.  An appellate court, however, is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'"  Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

11

We affirm substantially for the reasons expressed by the ALJ in her cogent and comprehensive Initial Decision, which was adopted by the Board without modification. We add the following comments.

Both the plain language of N.J.S.A. 53:5A-6 and its legislative history fully support the Board's decision. Appellants did not transfer from any of the titles enumerated in subsection (a). They are not eligible for the retirement benefits they seek.

As the ALJ found, adopting appellants' position would render the inclusion of the enumerated titles set forth in subsection (a) superfluous. "A construction that would render any part of a statute inoperative, superfluous or meaningless, is to be avoided." Hoffman v. Hock, 8 N.J. 397, 406-07 (1952) (citing 2 Sutherland, Statutory Construction § 4705 at 339 (3d ed. 1943)). It would also be contrary to the maxim of ejusdem generis. See Lewis v. Bd. of Trs., PERS, 366 N.J. Super. 411, 416 (App. Div. 2004) (stating "the inclusion of specific words and phrases controls or limits more general words and phrases in interpreting" statutory language). Had the Legislature intended to include all titles pensionable under the PERS or PFRS, it would not have listed the enumerated titles in the 1997 amendment.

Appellants' reliance on LaRosa is misplaced.[3] The controlling facts in LaRosa are readily distinguishable from this matter. In LaRosa, each appellant was previously employed by the ABC and the Division of Gaming and Enforcement (DGE) as inspectors. They became members of the State Police on April 12, 1997, after voluntarily transferring from those inspector positions. LaRosa, slip op. at 4. We noted subsection (a) unambiguously states that creditable service for purposes of the SPRS includes service as an inspector in the ABC. Id. at 12. Therefore, "all of appellants' service to the State – including their stints in PERS – qualify as creditable service under this subsection." Id. at 13. We rejected the Board's position that such PERS creditable service is eroded by subsection (b). Ibid. Central to that determination was the fact that the creditable service at issue was accrued in one of the titles enumerated in subsection (a); whereas appellants in this matter were not employed in any of the enumerated titles. LaRosa provides no support for appellants' position.

On appeal, appellants argue for the first time that the Board's decision violates the public policy to construe pension statutes liberally. We disagree.

---

[3] The court will engage in the following analysis of this unreported decision for the limited purpose of demonstrating that it is factually distinguishable from this matter. See Ryan v. Gina Marie, L.L.C., 420 N.J. Super. 215, 224 n.2 (App. Div. 2011).

A-2090-17T1

We recognize that a person deemed eligible for benefits is entitled to a liberal interpretation of the pension statute, Krayniak v. Bd. of Trs., 412 N.J. Super. 232, 242 (App. Div. 2010), because "pension statutes are 'remedial in character' and 'should be liberally construed and administered in favor of the persons intended to be benefitted thereby,'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg. High Sch. Dist., 199 N.J. 14, 34 (2009) (quoting Geller v. N.J. Dep't of Treasury, Div. of Pensions & Annuity Fund, 53 N.J. 591, 597-98 (1969)).

These well-established interpretative principles do not apply to eligibility determinations. Krayniak, 412 N.J. Super. at 242; Smith v. State of New Jersey, Div. of Pensions and Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). In light of the fiduciary duties imposed on fund administrators, pension fund eligibility guidelines "must be carefully interpreted so as not to obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und." Krayniak, 412 N.J. Super. at 242 (alterations in original) (quoting Smith, 390 N.J. Super. at 213).

The issue here is eligibility for a specific benefit – a full service credit transfer – not the amount owed under that disputed benefit. Because appellants

are ineligible for the pension benefits they seek, the rule of liberal construction does not apply.

Appellants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In conclusion, the Board's final decision was not arbitrary, capricious, or unreasonable. The Board correctly determined that the five named State Troopers and others similarly situated were not eligible for full SPRS value for prior service credits in the PFRS. Rather, they were only eligible for one percent of final compensation for each year of such service credit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-2090-17T1