776 A.2d 894 (2001)
342 N.J. Super. 385
Andrew SLOAN, a minor by his Guardian Duane SLOAN; Heather Hathaway, a minor by her Guardian, Robert Stuart; Hope Hathaway, a minor by her Guardian, Robert Stuart; Christina Harshaw, a minor by her Guardian, Edward Harshaw; Gladys Sepulveda, a minor by her Guardian, Gloria Gutierrez; Eric Morey, a minor by his Guardian, William Morey; and The Board of Education of the City of Wildwood, Petitioners-Appellants,
v.
Leo F. KLAGHOLTZ, Commissioner of Education, and New Jersey Department of Education, Respondents-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 2001.
Decided June 28, 2001.
*895 *896 Bruce M. Gorman, Rio Grande, argued the cause, for appellants (Gorman & Rauh, attorneys; Mr. Gorman, of counsel and on the brief).
Elisabeth Doyle, Deputy Attorney General, argued the cause, for respondents (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Doyle, on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The Wildwood Board of Education and six students who attend schools in Wildwood appeal from a final decision of the State Board of Education which rejected their challenge to the Department of Education's determinations of the amount of state school aid Wildwood was entitled to receive for the 1997-98 and 1998-99 school years. Appellants' primary argument is that the stabilization provisions of the Comprehensive Educational Improvement and Financing Act of 1996 (CEIFA), N.J.S.A. 18A:7F-1 to -36, under which certain school districts received less than the full amount of state school aid to which they would have been entitled under the basic CEIFA funding formula, are unconstitutional. We conclude that the stabilization provisions of CEIFA are constitutional, and affirm the State Board's final decision.
The Legislature enacted CEIFA after the Supreme Court held in Abbott v. Burke, 136 N.J. 444, 643 A.2d 575 (1994) that the provisions of the Quality Education Act (QEA), N.J.S.A. 18A:7D-1 to -37, governing state aid for public education were unconstitutional as applied to "special needs districts," sometimes referred to as "Abbott districts." As described by the Court:
[CEIFA] determines that the educational opportunity ... can and should be provided at a fixed per-pupil cost. The prescribed amount, referred to as the "T & E amount," purports to be the cost that is sufficient to ensure that a thorough and efficient education may be achieved in all districts....
....
The T & E amount is neither the minimum nor the maximum amount that a school district is permitted to spend per-pupil. Like all of the predecessor statutes, CEIFA requires each school district to raise locally a portion of the per-pupil expenditure. Similar to QEA, the required local share under CEIFA is dependent on local property taxes.... State aid makes up the difference between the required local share and the T & E amount.... *897 [Abbott v. Burke, 149 N.J. 145, 161-64, 693 A.2d 417 (1997) (citations omitted).]
Appellants' constitutional challenge is directed solely at the stabilization provisions of CEIFA, which were designed to temporarily moderate any decrease or increase in state school aid resulting from the transition from the QEA to the CEIFA funding formula. N.J.S.A. 18A:7F-10a provides that "the total stabilized aid for each district shall not be increased by more than the district's stabilization aid growth limit," and N.J.S.A. 18A:7F-3 sets forth a formula for calculating this limit on any increase in state aid over the amount paid in the prior year.
For the 1997-98 school year, the Department of Education determined that the amount of state aid to which Wildwood would have been entitled under the basic CEIFA funding formula was $2,445,907. However, the application of the stabilization aid growth limit reduced the actual amount of state aid to $645,851. For the 1998-99 school year, the Department calculated state aid under the basic CEIFA funding formula to be $2,955,107. However, applying the stabilization aid growth limit, the actual amount of state school aid to which Wildwood was entitled was $710,439.
In April 1998, the Wildwood Board of Education (the Board) brought an action in the Law Division seeking to compel the Department of Education to disburse the full amount of state school aid to which Wildwood would have been entitled under the basic CEIFA formula for both the 1997-98 and 1998-99 school years, without application of the stabilization aid growth limit. The trial court dismissed the complaint on the ground that the Board had failed to exhaust administrative remedies.
The Board responded by filing a petition with the Commissioner of Education, which contended that students in Wildwood were being denied a thorough and efficient education by application of the stabilization aid growth limit and sought essentially the same relief the Board had earlier sought in the Law Division. By an amended petition, six students in the district were added as parties. The Department of Education moved to dismiss the petition.
The Board then filed a complaint in the Chancery Division, seeking an order enjoining the Commissioner from taking any adjudicative action in the pending administrative matter and directing him to transfer the matter to the Office of Administrative Law (OAL) for a hearing before an Administrative Law Judge (ALJ). The trial court rejected this application and dismissed the Board's complaint.
The Board appealed the dismissal of its Law and Chancery Division actions to this court. We consolidated the appeals and affirmed the dismissal of both complaints in an unreported opinion. Board of Educ. of City of Wildwood v. Loewe, A-5337-97T1, and Board of Educ. of City of Wildwood v. Klagholz, A-6811-97T1 (decided Feb. 17, 1999). We stated in the course of our opinion:
We are mindful [the Board's] complaint ultimately poses a constitutional challenge to application of the stabilization aid growth limit to the Wildwood School District. However, inextricably interwoven with a full consideration of any constitutional issue are complex issues requiring fact-finding; namely, whether there is a factual basis for plaintiff's conclusion that application of N.J.S.A. 18A:7F-10a to it will deprive the school district of its ability to provide a "thorough and efficient" education to its students. *898 [op. at 342 N.J.Super. at 393, 776 A.2d at 899-900.]
After our opinion was filed, the Department of Education sent a letter directing the Board to submit "a specific, detailed explication of how the district failed to offer a thorough and efficient system of education during each of the two years at issue ..., and the manner in which such alleged deficiencies are a direct and proximate result of the funding mechanism set forth in CEIFA." The Board did not submit any factual materials in response to this letter. Instead, it submitted a "Supplemental Brief" which reiterated the Board's legal argument that the application of the stabilization provisions of CEIFA is, "by definition," unconstitutional, and that the Board had no obligation to submit factual materials showing the impact of those provisions upon its educational program:
[I]n enacting the C.E.I.F.A. statute the Legislature defined "thorough and efficient education" in terms of a monetary formula. That formula computed to the penny precisely how much money was needed to provide a thorough and efficient education, how much money was to be provided by the individual school district, and how much money was to be provided through state aid. The way the formula is structured, if the school district provides its calculated portion of funding, and if the state of New Jersey provides aid in the amount specified by the formula, then the children will receive a thorough and efficient education.
....
The problem is, the State of New Jersey failed to pay over the needed C.E.I.F.A. aid. Instead, [pursuant to the stabilization provisions,] the State of New Jersey paid $645,848.00 in C.E.I.F.A. aid in 1997-98, and $710,439.00 in C.E.I.F.A. aid for 1998-99.
Since the Wildwood School District did not receive the required amount of C.E.I.F.A. funding for 1997-98 and 1998-99, then by definition, the children did not [receive] a thorough and efficient education.

On January 10, 2000, the Commissioner issued a final decision dismissing appellants' petition challenging the amount of state school aid distributed to the Wildwood school district for the 1996-97 and 1997-98 school years. The Commissioner dismissed the petition as it related to the 1997-98 school year on the ground that it was filed beyond the 90-day limitation period allowed under the Department's rules. In addition, the Commissioner noted that even if the petition had been timely as to the 1997-98 school year, he would have rejected it on the merits for the same reasons he rejected appellants' petition relating to the 1998-99 school year. In rejecting Wildwood's challenge to CEIFA's stabilization provisions and dismissing its petition relating to the 1998-99 school year, the Commissioner stated:
The final aid amount due any district under CEIFA is derived through the cumulative application of the act's several formulas, including core curriculum standards, categorical and stabilization aid formulas.... The only action taken by [the Department of Education] was to implement, in addition to all other formulas required, those provisions of the statute which were structured, for the years in question, to create a transition between the prior and new funding systems; so as, in the interest of avoiding disruption and promoting effective use of funds, to prevent both extraordinary increases and extraordinary decreases in the aid provided to any district.
*899 The State Board affirmed the Commissioner's decision for the reasons expressed in his opinion.

I
Before considering the constitutionality of the stabilization provisions of CEIFA, we first address several preliminary procedural points raised by appellants.
First, appellants argue that the Commissioner violated the Administrative Procedure Act (APA) and the regulations adopted thereunder by failing to transfer their petition to the OAL. Under N.J.S.A. 52:14F-7(a), an agency head has exclusive authority to determine whether an administrative matter is a "contested case" within the intent of the APA. N.J.S.A. 52:14B-2(b); see In re Unif. Admin. Procedure Rules, 90 N.J. 85, 105, 447 A.2d 151 (1982). If a matter before an agency does not present contested material issues of fact that can be decided only "after [an] opportunity for an agency hearing," N.J.S.A. 52:14B-2(b), it is not a contested case subject to transfer to the OAL. Quad Enters. v. Borough of Paramus, 250 N.J.Super. 256, 263, 593 A.2d 1227 (App.Div.1991). Moreover, even if an administrative matter is found to be a "contested case," the agency head may elect to conduct the hearing himself. N.J.S.A. 52:14F-8(b); see In re Carberry, 114 N.J. 574, 584-86, 556 A.2d 314 (1989).
To implement these statutory provisions, the OAL has adopted administrative rules that encourage the prompt identification of "contested cases." N.J.A.C. 1:1-4.1(a) provides:
After an agency proceeding has commenced, the agency head shall promptly determine whether the matter is a contested case. If any party petitions the agency head to decide whether the matter is contested, the agency shall make such a determination within 30 days from receipt of the petition and inform all parties of its determination.
In addition, with respect to administrative matters that are determined to be "contested cases," N.J.A.C. 1:1-8.1(a) provides:
After the parties have complied with all pleading requirements, the agency shall within 30 days either file the case with the Clerk of the Office of Administrative Law in the manner provided by N.J.A.C. 1:1-8.2 or retain it under the provisions of N.J.S.A. 52:14F-8 and notify all parties of the decision to retain.
Appellants argue that, pursuant to N.J.A.C. 1:1-8.1(a), the Commissioner was required to determine whether to retain the case or transfer it to OAL within thirty days after the filing of their second amended petition on August 18, 1998. However, by its plain terms, N.J.A.C. 1:1-8.1(a) only applies "[a]fter the parties have complied with all pleading requirements." In this case, the applicable pleading requirements, which "are governed by [the rules of] the agency with subject matter over the case[,]" N.J.A.C. 1:1-6.1(a)here the Department of Educationincluded not only the filing of appellants' petition but also the respondent Department's answer. N.J.A.C. 6A:3-1.5. The Department never filed an answer; instead, it filed a motion to dismiss appellants' petition, which the Commissioner eventually granted. Therefore, the thirty day period provided by N.J.A.C. 1:1-8.1(a) for an agency head to determine whether to transfer a matter to the OAL or retain jurisdiction was never triggered. Moreover, N.J.A.C. 1:1-8.1(a) only comes into play after an agency head determines that an administrative matter is a "contested case," and the Commissioner never determined that appellants' petition presented a "contested case."
Appellants also argue that the Commissioner lacked the authority to require them *900 to submit factual support for their claim that the stabilization provisions of CEIFA prevented the Wildwood school system from providing a thorough and efficient system of public education. N.J.A.C. 6A:3-1.10(a) provides:
At any time prior to transmittal of the pleadings to the OAL, the Commissioner, in his or her discretion or upon motion to dismiss filed in lieu of answer, may dismiss the petition on the grounds that no sufficient cause for determination has been advanced, or for lack of jurisdiction, failure to prosecute or other good reason.
(Emphasis added.)
Appellants contend that a motion to dismiss on the ground that "no sufficient cause for determination has been advanced" is the administrative equivalent of a motion to dismiss under Rule 4:6-2(e) for "failure to state a claim upon which relief can be granted," and thus the Commissioner lacked authority to require them to submit factual support for their allegations.
However, the Commissioner was not required to construe his own procedural rule in the restrictive fashion urged by appellants. An administrative agency has broad authority to adopt administrative rules and mold its procedures in a manner best suited to perform its statutory responsibilities. See In re Unif. Admin. Procedure Rules, supra, 90 N.J. at 92, 447 A.2d 151. Moreover, courts extend substantial deference to an agency's interpretation of its own rules. DiMaria v. Board of Trs. of Pub. Employees' Ret. Sys., 225 N.J.Super. 341, 351, 542 A.2d 498 (App. Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). Consequently, it is within the Commissioner's authority to treat a motion to dismiss on the ground that "no sufficient cause for determination has been advanced" as encompassing not only a claim that the petition on its face fails to set forth a basis for relief, but also that petitioners have failed to provide any factual support for the general allegations of their petition.
In addition, appellants argue that the Commissioner abused his discretion by failing to transfer their petition to the OAL for a contested case administrative hearing. When we heard the Board's prior appeal, we assumed that a resolution of its challenge to the constitutionality of the stabilization provisions of CEIFA would require administrative fact-finding. If that assumption had turned out to be correct, it may have been appropriate for the Commissioner to transfer the matter to the OAL. See Abbott v. Burke, 100 N.J. 269, 301 n. 6, 495 A.2d 376 (1985).
However, when the Commissioner directed the Board to submit "a specific, detailed explication of how the district failed to offer a thorough and efficient system of education during each of the two years at issue in the petition, and the manner in which such alleged deficiencies are a direct and proximate result of the funding mechanism set forth in CEIFA," appellants declined to present any factual support for their contentions. Instead, appellants simply reiterated their previously stated legal position that because application of the stabilization growth limit provisions of CEIFA resulted in Wildwood receiving less state school aid than it would have been entitled to receive under the basic CEIFA funding formula, "by definition, the children did not [receive] a thorough and efficient education." In view of this position, the Commissioner correctly concluded that appellants' claim was purely legal in nature and did not present any material issue of fact that would require a contested case hearing before an ALJ. See In re Solid Waste Util. Customer Lists, 106 N.J. 508, 517, 524 A.2d 386 (1987) ("It *901 is only when the proposed administrative action is based on disputed adjudicative facts that an evidentiary hearing is mandated"); see also Board of Educ. of Upper Freehold Reg'l Sch. Dist. v. State Health Benefits Comm'n, 314 N.J.Super. 486, 491-92, 715 A.2d 358 (App.Div.1998); Contini v. Board of Educ. of Newark, 286 N.J.Super. 106, 120, 668 A.2d 434 (App. Div.1995), certif. denied, 145 N.J. 372, 678 A.2d 713 (1996).

II
We proceed to a consideration of the constitutionality of the stabilization provisions of CEIFA. Initially, we note that even if there were a constitutional infirmity in those provisions, there is substantial doubt whether the Board would be entitled to any monetary relief. Appellants' constitutional challenge relates solely to the state school aid distributed to Wildwood for the 1997-98 and 1998-99 school years; appellants do not contend that the stabilization provisions of CEIFA have had any effect on the calculation of Wildwood's state aid in subsequent years. Thus, the only relief appellants seek is a retroactive award of additional state aid for the 1997-98 and 1998-99 school years. However, courts are reluctant to grant retroactive monetary relief when a statute relating to government revenues or appropriations is held to be unconstitutional, because of the potential adverse impact of such relief upon public fiscal stability. See, e.g., Salorio v. Glaser, 93 N.J. 447, 462-69, 461 A.2d 1100, cert. denied, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); Borough of Neptune City v. Borough of Avon by the Sea, 61 N.J. 296, 310-11, 294 A.2d 47 (1972). Consequently, when the Court has found that statutory provisions governing state aid to public education violated the state constitutional mandate that "[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools," N.J. Const. Art. VIII, § 4, ¶ 1, it has granted prospective relief only. See, e.g., Abbott v. Burke, 119 N.J. 287, 389, 575 A.2d 359 (1990); Robinson v. Cahill, 62 N.J. 473, 520, 303 A.2d 273 (1973).
In any event, there is no need to consider whether appellants would be entitled to monetary relief if their arguments were well-founded, because we conclude that the stabilization provisions of CEIFA are constitutional. The basic provision of CEIFA limiting the growth in state school aid under the funding formula provided thereunder is N.J.S.A. 18A:7F-10(a), which provides in pertinent part:
Notwithstanding any other provision of this act to the contrary, the total stabilized aid for each district shall not be increased by more than the district's stabilization aid growth limit. In the event that total stabilized aid exceeds the prebudget year total by a rate greater than the stabilization aid growth limit, the commissioner shall adjust the components of total stabilized aid so that they total exactly the prebudget year total increased by the stabilization aid growth limit. For the 1997-98 school year, the prebudget year total shall include foundation aid, transition aid, categorical aids for special education, bilingual education and county vocational education, and transportation aid paid for the 1996-97 school year. For the 1998-99 school year and thereafter, the prebudget year total shall be the total for the same aid categories as included in total stabilized aid ..., as paid in the prebudget years.
In addition, N.J.S.A. 18A:7F-3 provides that:
"Stabilization aid growth limit" means 10% or the rate of growth in the district's projected resident enrollment *902 over the prebudget year, whichever is greater. For the 1997-98 school year, this means 8% or one-half the rate of growth in the district's projected resident enrollment and preschool enrollment between the October 1991 enrollment report as contained on the district's Application for State School Aid for 1992-93 and the 1997-98 school year, whichever is greater. For the 1998-99 and 1999-2000 school years, this means the greatest of the following: 10%, one-half of the district's rate of growth in projected resident enrollment and preschool enrollment over the October 1991 enrollment report as contained on the district's Application for State School Aid for 1992-93, or the district's projected rate of growth in resident enrollment over the prebudget year....
Appellants argue that these provisions are unconstitutional because the "prebudget year [school aid] total ... as paid in the prebudget year[ ]," N.J.S.A. 18A:7F-10(a), was calculated under the QEA funding formula, which the Supreme Court held to be unconstitutional in Abbott v. Burke, supra, 136 N.J. 444, 643 A.2d 575. Thus, according to appellants, the use of the prebudget year school aid calculated under QEA to determine the stabilization aid growth limit "perpetuates" an unconstitutional state school aid formula.
However, the essential premise of appellants' argumentthat the Court held the QEA state school aid funding formula to be unconstitutional on its faceis erroneous. In fact, the Court held the QEA to be unconstitutional only insofar as it failed "to assure parity of regular education expenditures between the special needs districts and the more affluent districts." Abbott v. Burke, supra, 136 N.J. at 447, 643 A.2d 575. Accordingly, the Court declared the QEA state school aid formula to be unconstitutional "as applied to the special needs districts." Abbott v. Burke, supra, 149 N.J. at 159, 693 A.2d 417. The Court did not declare the formula to be unconstitutional as applied to other school districts. Because Wildwood is not a special needs district, it cannot claim any rights based on the declaration of invalidity of the QEA funding formula as applied to special needs districts.
Moreover, there is no evidence that application of the stabilization provisions of CEIFA in calculating the state school aid distributed to Wildwood resulted in any significant decrease in its school budgets.[1] Insofar as the record before us indicates, the stabilization provisions may have only resulted in the imposition of a greater tax burden upon local property owners, a consequence that does not implicate the Thorough and Efficient Education Clause of the New Jersey Constitution. Therefore, we reject appellants' constitutional challenge to the stabilization provisions of CEIFA.
Appellants also argue that the Commissioner "miscalculated the CEIFA aid to which [Wildwood] is entitled." However, this argument is predicated on the assumption that the calculation of the state school aid distributable to Wildwood under the express terms of the CEIFA stabilization *903 provisions would be unconstitutional, and consequently, those provisions must be interpreted in a manner that preserves their constitutionality. Because we conclude that the stabilization provisions of CEIFA are constitutional, there is no need to re-interpret them in order to preserve their constitutionality.
Affirmed.
NOTES
[1] We note that Wildwood's school budget for 1997-98 and 1998-99 was within the "T & E amount" prescribed by the Commissioner to assure that a thorough and efficient level of education is provided in all school districts. In 1997-1998, Wildwood's minimum T & E budget was $6,150,792, its maximum $6,798,244, and its actual school budget was $6,443,451. In 1998-1999, Wildwood's minimum T & E budget was $6,337,718, its maximum $7,004,948 and its actual school budget was $6,573,094. Thus, Wildwood's appropriations for public school education were within the range prescribed by the Commissioner in both years.