**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5228-17T3

RAYMOND CARLSON,
(Deceased),

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,[1]

    Respondent-Respondent.

_____

> Submitted May 9, 2019 – Decided May 22, 2019
>
> Before Judges Simonelli and Firko.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-030802.
>
> The Toscano Law Firm, LLC, attorneys for appellant (Patrick P. Toscano, Jr., on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

---

[1] Improperly pled as the Division of Pension and Benefits.

General, of counsel; Danielle P. Schimmel, Deputy Attorney General, on the brief).

PER CURIAM

Raymond Carlson was a firefighter with the City of Summit who retired on special retirement under N.J.S.A. 43:16A-11.1 and received his monthly retirement allowance from September 2004 until his death in May 2014. Carlson's child and widow, appellant Stephanie Carlson, received survivor special retirement benefits after Carlson's death pursuant to N.J.S.A. 43:16A-12.1(a). In March 2017, appellant requested that the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) amend Carlson's pension status to accidental death benefits under N.J.S.A. 43:16A-10. Appellant appeals from the Board's July 12, 2018 final agency decision denying her request to transmit this matter to the Office of Administrative Law (OAL) for a hearing as a contested case. We affirm.

I.

We begin with a review of the pertinent authority. The PFRS Act, N.J.S.A. 43:16A-1 to -68, and corresponding regulations N.J.A.C. 17:4-6.1 to -6.18, govern the PFRS.

General Provisions

N.J.S.A. 43:16A-1 contains the following pertinent definitions:

(3) "Member" shall mean any . . . fireman included in the membership of the retirement system pursuant to this amendatory and supplementary act . . . .

    . . . .

(7) "Service" shall mean <u>service as a . . . fireman paid for by an employer</u>.

    . . . .

(11) "Annuity" shall mean payments for life derived from the aggregate contributions of a member.

(12) "Pension" shall mean payments for life derived from contributions by the employer.

(13) "Retirement allowance" shall mean the pension plus the annuity.

    . . . .

(16) "Retirement" shall mean <u>the termination of the member's active service with a retirement allowance granted and paid under the provisions of this act</u>.

[(Emphasis added).]

N.J.A.C. 17:4-6.7(a)(1) provides that "[a] 'member in service' means that the member or the employer was making pension contributions to the retirement system at the time of filing the application for a disability retirement allowance."

N.J.A.C. 17:4-6.1 governs the retirement application process. N.J.A.C. 17:4-6.1(a) provides that "[a] member's retirement application becomes

3

effective on the first of the month following receipt of the application unless a future date is requested." N.J.A.C. 17:4-6.2 provides that a member's retirement allowance becomes due and payable "[thirty] days after the date the Board approved the application for retirement or one month after the date of the retirement, whichever is later." N.J.A.C. 17:4-6.3(a) provides:

> Except as provided by N.J.A.C. 17:4-6.7, a member shall have the right to withdraw, cancel or change an application for retirement at any time before the member's retirement allowance becomes due and payable by sending a written request signed by the member. Thereafter, the retirement shall stand as approved by the Board.
>
> [(Emphasis added).]

## Special Retirement

N.J.S.A. 43:16A-11.1 governs special retirement. N.J.S.A. 43:16A-11.1(a) provides:

> Should a member resign after having established [twenty-five] years of creditable service, he may elect "special retirement," provided, that such election is communicated by such member to the retirement system by filing a written application, duly attested, stating at what time subsequent to the execution and filing thereof he desires to be retired. He shall receive, in lieu of the payment provided in [N.J.S.A. 43:16A-11], a retirement allowance which shall consist of:
>
> (1) An annuity which shall be the actuarial equivalent of his aggregate contributions, and

4

(2) A pension in the amount which, when added to the member's annuity, will provide (a) for a person who is a member on the effective date [June 28, 2011] of [L.] 2011, [c.] 78, a total retirement allowance of [sixty-five percent] of final compensation, plus [one percent] of final compensation multiplied by the number of years of creditable service over [twenty-five] but not over [thirty] or (b) for a person who becomes a member of the retirement system after that effective date, a total retirement allowance of [sixty percent] of final compensation, plus [one percent] of final compensation multiplied by the number of years of creditable service over [twenty-five] but not over [thirty]; provided, however, that any member who has earned, prior to July 1, 1979, more than [thirty] years of creditable service, shall receive an additional [one percent] of his final compensation for each year of his creditable service over [thirty].

The [Board] shall retire him at the time specified or at such other time within one month after the date so specified as the [B]oard finds advisable.

Upon the receipt of proper proofs of the death of such a retired member, there shall be paid to his beneficiary an amount equal to one-half of the final compensation received by the member.

Survivor Special Retirement Benefits

N.J.S.A. 43:16A-12.1(a) governs survivor special retirement death benefits:

Upon the death after retirement of any member of the retirement system there shall be paid to the member's widow or widower a pension of [fifty percent] of final compensation for the use of herself or himself, to

5

continue during her or his widowhood, plus [fifteen percent] of such compensation payable to one surviving child or an additional [twenty-five percent] of such compensation to two or more children; if there is no surviving widow or widower or in case the widow or widower dies or remarries,[twenty percent] of final compensation will be payable to one surviving child, [thirty-five percent] of such compensation to two surviving children in equal shares and if there be three or more children, [fifty percent] of such compensation would be payable to such children in equal shares.

## Survivor Accidental Death Benefits

N.J.S.A. 43:16A-10 governs survivor accidental death benefits. N.J.S.A. 43:16A-10(1) provides for payment of survivor accidental death benefits "[u]pon the death of a member <u>in active service</u> as a result of . . . [a]n accident met in the actual performance of duty at some definite time and place[.]" (Emphasis added). N.J.S.A. 43:16A-10(2), (5), and (6) provide greater survivor death benefits than N.J.S.A. 43:16A-12.1(a).

## Active Member Status

N.J.S.A. 43:16A-9(5)(a) addresses when a member is deemed an active member of the PFRS for eligibility purposes:

> For the purposes of this section and [N.J.S.A. 43:16A-10(5)], <u>a member of the [PFRS] shall be deemed to be an active member</u> for a period of no more than [ninety-three] days while on official leave of absence without pay when such leave is due to any reason other than illness, and for a period of not more than one year in

6

the event of an official leave (a) due to the member's maternity, or (b) to fulfill a residency requirement for an advanced degree, or (c) as a full-time student at an institution of higher education, and (1) while he is disabled due to sickness or injury arising out of or in the course of his employment as a member to whom this act applies, is not engaged in any gainful occupation, and is receiving or entitled to receive periodic benefits (including any commutation of, or substitute for, such benefits) for loss of time on account of such disability under or by reason of workmen's compensation law, occupational disease law or similar legislation and has not retired or terminated his membership; or (2) for a period of no more than two years while on official leave of absence without pay if satisfactory evidence is presented to the retirement system that such leave of absence without pay is due to the member's personal illness other than an illness to which (1) above applies.

[(Emphasis added).]

II.

We now turn to the facts of this case. Carlson responded to the World Trade Center on September 11, 2001. On November 10, 2002, Carlson submitted an application for special retirement, effective August 1, 2004. On December 15, 2003, the Board approved Carlson's application, effective August 1, 2004. On September 1, 2004, Carlson began receiving a special retirement allowance of $4,776.22 per month. He received 116 monthly retirement payments through May 1, 2014, totaling $589,633.06.

7

A-5228-17T3

Carlson died on May 6, 2014, from advanced head and neck cancer. On May 20, 2014, the Division of Pensions and Benefits (Division) notified appellant that she would receive a survivor special retirement benefit of $4,005.39 per month for the rest of her life or until she remarried and Carlson's minor child would receive $1,201.63 per month. See N.J.S.A. 43:16A-12.1(a). The Division also notified appellant she would receive a group life insurance benefit of $43,995.96. See N.J.S.A. 43:16A-7(3). In July 2014, appellant and Carlson's child began receiving their monthly benefits. Appellant also received the group life insurance benefit.

On July 24, 2017, approximately thirteen years after Carlson's effective retirement date, and approximately three years after his death, appellant requested that the Board amend Carlson's pension status to accidental death benefits under N.J.S.A. 43:16A-10, claiming Carlson's illness and death may have been causally related to the time he spent on duty at or near the World Trade Center.

The Board referred appellant's request to the Division for administrative review. On August 11, 2017, the Division denied the request administratively.

Quoting the language in N.J.A.C. 17:2-6.3(a),[2] the Division found Carlson was approved for a special retirement allowance, effective August 1, 2004; Carlson began receiving his retirement allowance on September 1, 2004; and appellant had been receiving her survivor special retirement benefits since May 2014. The Division forwarded appellant's request to the Board for final agency action.

On April 19, 2018, the Board denied appellant's request. The Board reviewed the history of this matter, found N.J.S.A. 43:16A-10 requires that the death of the PFRS member must occur while in active service, and determined Carlson was not eligible for accidental death benefits because he was retired and receiving a special retirement allowance at the time of his death. The Board advised appellant that she could appeal to the Board within forty-five days, and the Board would determine whether to grant an administrative hearing based on the standards for a contested case under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, and corresponding administrative regulations. The Board also advised:

> If the granted appeal involves solely a question of law, the Board may retain the matter and issue a final determination, which shall include detailed findings of fact and conclusions of law based upon the documents,

---

[2] The Division incorrectly cited N.J.A.C. 17:2-6.3(a), which governs the Public Employees' Retirement System; however, it is clear the Division was referring to N.J.A.C. 17:4-6.3(a), which governs the PFRS.

submissions and legal arguments of the parties. The Board's final determination may be appealed to the Superior Court, Appellate Division. If the granted appeal involves a question of fact, the Board shall submit the matter to the [OAL].

Appellant appealed the Board's decision and requested transmittal of the matter to the OAL for a hearing as a contested case. Appellant did not assert there was a factual dispute. Rather, she argued that the Board:

(1) misinterpreted the relevant statutes governing the issues;

(2) did not consider this was a case of first impression;

(3) did not fully understand the relevant delayed manifestation/eventual ascertainment of the cause of death issue;

(4) did not fully consider the true legislative intent of the statutes the Board relied on in denying the requested change regarding accidental death benefits; and

(5) did not fully understand or properly interpret voluminous medical records and/or medical opinions regarding when the true cause of Carlson's death was actually discoverable or conceivable.

On June 11, 2018, the Board denied appellant's request for transmittal of the case to the OAL finding "there were no questions of fact in dispute merely questions of law." In a July 12, 2018 final administrative decision, the Board found this matter did not entail any disputed questions of facts and the Board

10

was able to reach its findings of facts and conclusions of law without the need for an administrative hearing. The Board recounted the undisputed factual and procedural history and determined:

> As an active member [] Carlson applied for and was granted a [s]pecial retirement. At that point his status was no longer an active participant, but [] Carlson was a retiree of PFRS. As a matter of law, the Board denied [appellant's] request in accordance with [N.J.S.A. 43:16A-10] which requires that the death of the PFRS member must occur while the member is in active service. Because [] Carlson was retired and receiving [s]pecial retirement benefits he is not eligible for [a]ccidental death benefits.

The Board acknowledged that the term "active service" is not specifically defined in N.J.S.A. 43:16A-10, but cited the definition of "service" in N.J.S.A. 43:16A-1 that "'[s]ervice' shall mean service as a . . . fireman paid for by an employer." The Board also noted that N.J.S.A. 43:16A-9(5)(a) provides that a PFRS member is in active service if he has not retired or terminated his membership.

The Board found that the history of N.J.S.A. 43:16A-10 revealed a legislative intent to narrow the eligibility for accidental death benefits and require that such benefits be awarded only upon the death of a member who was in active service. The Board explained:

11

A review of the history of [N.J.S.A.] 43:16A-10 indicates that prior to 1967, an accidental death benefit was awarded "[u]pon the accidental death of a member before retirement." L. 1964, c. 241, §7 (emphasis added). Thus, a death benefit was payable so long as no retirement application was filed, even if the member had left service and was not contributing to the system. In 1967, the language of [N.J.S.A.] 43:16A-10 was amended to provide the benefit "[u]pon the death of a member in active service." L. 1967, c. 250 (Chapter 250), § 10 (emphasis added). Chapter 250's definition of the term "retirement" further indicates . . . the Legislature's intent to narrow the eligibility for an accidental death benefit. It defined "[r]etirement" as "withdrawal from active service with a retirement allowance granted under [the PFRS statutes]."

[(Second, fourth, and sixth alteration in original).]

The Board also determined that "[b]y the plain language of [N.J.S.A.] 43:16A-10, the Legislature intended that an accidental death benefit only be available to those members who are in 'active service' at the time of death and had not yet retired."

## III.

On appeal, appellant does not point to any dispute of material fact. Rather, she argues she should have been afforded a hearing before the OAL to prove that "Carlson likely contracted cancer as a direct result of his on the job work immediately post 9/11 . . . [and] if he did he would have been entitled to seek [a]ccidental [d]isability [r]etirement, and his surviving widow would have

12

undoubtedly been entitled to that substantial related death benefit."[3] (Emphasis added). However, appellant did not request a change in Carlson's pension status to accidental disability retirement under N.J.S.A. 43:16A-7, nor did she raise this issue before the Board.[4] We will not address an issue, such as this, that was not raised below, is not jurisdictional in nature, and does not substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Thus, the only question is whether the Board should have transmitted this matter to the OAL for a hearing.

"The [APA] . . . does not create a substantive right to an administrative hearing; it merely provides for a procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." Toys "R" Us, Inc. v. Twp of Mount Olive, 300 N.J. Super. 585, 590 (App. Div. 1997). Under the APA, an agency head has the exclusive authority to determine whether a case is a contested case within the intent of the APA.

---

[3] Appellant did not address the Board's determination that Carlson was not eligible for accidental death benefits under N.J.S.A. 43:16A-10 because he was not in active service at the time of his death and had retired. The issue therefore is deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

[4] Appellant does not even cite N.J.S.A. 43:16A-7 in her merits brief.

N.J.S.A. 52:14F-7(a); N.J.A.C. 1:1-4.1; Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 392 (App. Div. 2001). A hearing is only required if the matter before the agency presents contested material issues of fact. Sloan, 342 N.J. Super. at 392. (citing N.J.S.A. 52:14B-2(b)). When there are no contested material issues of fact, the matter is not considered a "contested case." Ibid.

There was no dispute as to the material facts in this case. Thus, there was no need for a hearing before the OAL because this was not a contested case. For a survivor to be entitled to accidental death benefits under N.J.S.A. 43:16A-10, the PFRS member must have died "in active service as a result of . . . [a]n accident met in the actual performance of duty at some definite time and place." Carlson was not in active service when he died. He retired on special retirement and terminated his membership in the PFRS years before his death, and he received his special retirement allowance for nearly ten years. Because Carlson was not in active service when he died, his pension status could not be amended to accidental death benefits under N.J.S.A. 43:16A-10. The cause of his death was not relevant to this issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5228-17T3