**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0775-19T3

RICHARD KESNER,

    Petitioner-Appellant,

V.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Submitted December 16, 2020 – Decided  January 19, 2021

Before Judges Fuentes and Rose.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-30722.

Crivelli & Barbati, LLC, attorneys for appellant (Amanda E. Nini, of counsel and on the brief).

Robert Seymour Garrison, Jr., Director of Legal Affairs, attorney for respondent (Juliana C. DeAngelis, Deputy Attorney General, on the brief).

PER CURIAM

Richard Kesner appeals from an October 8, 2019 final agency decision of the Board of Trustees (Board), Police and Firemen's Retirement System (PFRS) denying his request to cancel his pension loan obligation. Kesner maintains he paid the loan in full prior to his retirement, and the Board should have transmitted his matter to the Office of Administrative Law (OAL) for a hearing to resolve disputed questions of fact in that regard. For the first time on appeal, Kesner alternatively argues the Division of Pensions and Benefits (Division) should have forgiven the loan debt pursuant to the doctrine of laches. We affirm.

I.

We summarize the pertinent facts chronologically and in some detail from the record before the Board to give context to Kesner's arguments.

Kesner established membership in the PFRS on June 1, 1981, when he was hired as a firefighter by the Jersey City Fire Department. In July 2002, after twenty-one years of service in the PFRS, Kesner purchased credit for twenty-three months of prior military service at a cost of $35,137.31. See N.J.S.A. 43:16A-11.11. According to the Division's "Certification of Payroll Deductions," 120 monthly payments for that purchase commenced on December

2                                                                          A-0775-19T3

1, 2002.[1]  The purchase of service credits enabled Kesner to retire on July 1, 2004 with twenty-five years of creditable service in the PFRS (special retirement).

On March 18, 2004, the Division received Kesner's completed "Application for Retirement Allowance."  In response to the question:  "If you will have an outstanding loan balance at retirement, how do you want to pay the loan off[,]" Kesner checked the box that indicated:  "Continue Payments Into Retirement."

On April 19, 2004, the Division notified Kesner that the Board approved his application for special retirement, effective July 1, 2004.  Two days later, the PFRS issued Kesner a $32,000 pension loan via check number 695906. According to the Division's June 1, 2004 "Certification of Payroll Deductions," the loan was amortized over fifty-eight payroll deductions of $610.36.

---

[1]  The Board referenced the December 1, 2002 certification in its decision, but the parties did not provide that certification or any documents relating to Kesner's purchase of service credits on this appeal.  Nor did the Board list the certification or the purchase documents in its statement of items comprising the record on appeal.  See R. 2:5-4(b).  But, Kesner did not move to supplement the record pursuant to R. 2:5-5(b).  In any event, we refer to those documents as background only here, where Kesner does not challenge their existence or accuracy.

A-0775-19T3

Payments commenced on June 1, 2004. Because Kesner retired on July 1, 2004, only one payroll deduction was made.

On May 20, 2004, the Division issued Kesner its "Quotation of Retirement Benefits." Among other information, that form specifies Kesner's June 30, 2004 service termination date, and his membership credit of twenty-five years as of that date. "Additional Important Information" is included on the second page, and states in its entirety:

> At the time of your termination, your record indicates you will have an outstanding arrears balance of $31,338.41. This balance must be paid in full before your retirement. Please make your checks payable to the Police and Firemen's Retirement System.
>
> ACCORDING TO OUR RECORDS, YOU WILL HAVE AN OUTSTANDING LOAND [sic] BALANCE AT THE TIME OF RETIREMENT. CHAPTER 132, P.L. 1999 PERMITS YOU TO CINTINUE [sic] YOUR MONTHLY LOAN DEDUCTION IN RETIREMENT. A LOAN DEDUCTION IN THE AMOUNT OF [$]610.36 WILL BE TAKEN FROM YOUR RETIREMENT CHECKS UNTIL THE LOAN BALANCE, PLUS INTEREST, IS PAID IN FULL. IF YOU WISH TO PAY OFF THE LOAN BALANCE AT THIS TIME, PLEASE MAKE YOUR CHECK PAYABLE TO: POLICE AND FIREMEN'S RETIREMENT SYSTEM IN THE AMOUNT OF [$]31,635.02 AND MAIL IT ALONG WITH THIS PAGE TO THE ADDRESS ABOVE.

On June 22, 2004, the Division received check number 946 in the amount of $31,338.41 from Kesner. According to the Division's "Report of Cash Received," the payment was made for "[a]rrears." Notably, the amount of Kesner's payment precisely matches the amount of the "outstanding arrears balance" set forth in the Division's May 20, 2004 quotation.

The Division has no record of another "lump sum" payment for Kesner's pension loan described in the Division's May 20, 2004 quotation. The Board conceded payments should have continued into Kesner's retirement pursuant to his election and the Division failed to notify Kesner of the loan balance until thirteen years after his retirement. According to the Board, "a post-retirement audit of [Kesner's] account revealed the outstanding loan balance which was never paid."[2]

---

[2] Sometime prior to July 2016, the Division conducted an audit of the State's pension systems, including the PFRS. Among other errors, the Division identified multiple loans, including Kesner's, which were not paid within five years of issuance, thereby jeopardizing the status of five pension funds, including the TPAF, as qualified governmental plans under the Internal Revenue Code. See 26 U.S.C. § 72(p)(2)(B). Under the Code, such unpaid loans are deemed distributions, which are taxable as income to the funds' members. 26 U.S.C. § 72(p)(1). Following the audit, the Division and the Internal Revenue Service executed an agreement, detailing the Division's voluntary compliance program in exchange for amnesty regarding 336 "loan failures in 2014, 2015 and 2016," totaling $1,648,941.96. The State provided the agreement in its appendix on appeal. Although the Board apprised Kesner about the substance of the

On November 14, 2017, the Division notified Kesner that the audit revealed he owed $31,635.02, plus interest. The Division offered Kesner the opportunity to satisfy the loan with a lump sum payment. Otherwise, $610.36 would be deducted from his monthly payments, commencing with his next pension check and continuing until the balance was repaid.

Between December 14, 2017 and July 30, 2019, Kesner on his own behalf – and with the assistance of two different law firms – repeatedly disclaimed he had a loan balance. As one notable example, on January 19, 2018, Kesner emailed the Division's supervising accountant, asserting: "I retired in 2004 and was told all debt had to be settled before I could receive my pension. I made a lump sum payment and retired. Now I receive a letter stating I owe $35,000. Everything was settled in 2004." (Emphasis added). Kesner continued to express his frustration about the delayed notification of the loan balance, claiming: "If there was a problem [and] I was notified in a timely manner, this could have been settled in 2004."

---

agreement, it is unclear from the record whether the Board provided the agreement to Kesner during the pendency of his appeal before the agency. Kesner did not move before this court to preclude the agreement from the Board's appendix.

6

Through his initial attorney's April 18, 2018 correspondence to the Division, Kesner "admit[ted] he took a loan from his pension in the amount of approximately $32,000" in 2004.  Kesner further acknowledged he "borrowed the money from his mother[-]in[-]law Julia Hillick, obtained a check, brought the check to the [S]tate and paid off the loan."  Counsel stated defendant would have "some difficulty" proving he repaid the loan because Hillick had since died "and any bank records relating to this payment is [sic] not really available."  Kesner and his attorney asserted their belief that "the State made a mistake and did not correctly record his repayment of the loan."

In his June 28, 2018 correspondence to the Division, counsel advised that Kesner "located a letter from the State from May 20, 2004[,] which says he has an outstanding balance of $31,000 and it must be paid in full before he retires.  His position is, he paid it."  Notably, Kesner's attorney referenced and attached the May 20, 2004 quotation.

In its July 6, 2018 response, the Division maintained its position that Kesner only repaid the arrears balance due on his military service credits purchase, pursuant to the "require[ment]" to do so "prior to his retirement."  Conversely, Kesner's pension "loan balance due at retirement did not have to be

A-0775-19T3

paid in full prior to his retirement, but he had the option to pay this in a lump sum." The Division explained the issue:

> A lump sum payment was not received for the loan and the outstanding loan balance and monthly payment should have been transferred to his retirement account when [the Division] created [Kesner's] retirement account, but this did not occur. This balance remained unpaid until it was found through an audit last year.

Following additional attempts to convince the Division that he paid the loan – and that the Division's error "could have been settled in 2004" – Kesner appealed to the Board. Kesner was afforded the opportunity to appear before the Board with counsel but elected not to do so. After considering the record at its June 10, 2019 meeting, the Board rejected Kesner's request to cancel his outstanding loan balance and issued a written decision the following day. Another attorney on Kesner's behalf thereafter requested a hearing before the OAL, claiming "material facts [were] in dispute." The Board denied Kesner's request, and thereafter issued its final administrative decision.

In its cogent written decision, the Board detailed its findings of fact, which are consistent with our summary above. The Board further noted "Kesner's eligibility for [s]pecial retirement benefits was based on the years of service[,] which included the purchase of military service. If not for the completion of the

8

purchase . . . Kesner would have been ineligible for [s]pecial retirement benefits."

Turning to its conclusions of law, the Board cited the PFRS statute pertaining to the repayment of loans after a member retires, and accurately found Kesner was required to repay his pension loan with interest. See N.J.S.A. 43:16A-16.2. Noting the Division erred by failing to deduct Kesner's pension loan from his monthly retirement benefits, the Board correctly recognized the PFRS was statutorily authorized to correct that error under N.J.S.A. 43:16A-18, which provides, in pertinent part:

> Should any change or error in records result in a member or person receiving from the retirement system more or less than he would have been entitled to receive had the records been correct, the retirement system shall correct such error, and as far as practicable, shall adjust the payments in such manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid. The actuarial equivalent of any shortage in required contributions at the time of retirement on account of misstatement of age, leave of absence, or clerical error, shall be deducted from the retirement allowance otherwise payable.

Additionally, the Board

> relie[d] on the fact that the PFRS is a tax-qualified plan in accordance with the Internal Revenue Code [(IRC)], which requires that pension loans comply with [IRC] section 72(p). Failure of the PFRS to comply with

9

[that] section . . . could result in plan disqualification, meaning the PFRS could lose its tax-qualified status. The Board is also aware that the [Division] entered into an [a]greement with the Internal Revenue Service [(IRS)] to correct errors in the loan program that could have disqualified the PFRS, and as part of that [a]greement, the PFRS Board must enforce [IRC] section 72(p).

Reiterating its initial decision that "this matter does not entail any disputed questions of fact," the Board found it "was able to reach its findings of fact and conclusions of law in this matter on the basis of the retirement system's enabling laws and regulations and without the need for an administrative hearing." This appeal followed.

II.

Appellate review of an administrative agency action is deferential and limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we will not overturn an agency decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)). Nor will we overturn an agency decision merely

10

because we would have come to a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011).

Generally, we "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). Substantial deference must be extended to an agency's interpretation of its own regulations, particularly on technical matters within the agency's expertise. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004) (citation omitted). We are not, however, "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196.

On appeal, Kesner reprises his contention that he paid the pension loan in full before he retired and that denial creates an issue of fact, entitling him to a hearing. Absent from Kesner's merits brief, however, is any reference to his purchase of credit for his prior military service, which enabled him to retire early. Notably, Kesner does not contest the Board's findings in that regard.

Pursuant to the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31, an administrative agency may transfer a "contested case" to the Office of Administrative Law for a hearing. A contested case is defined under the APA as:

> [A] proceeding, . . . in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing[.]
>
> [N.J.S.A. 52:14B-2.]

"The [APA] . . . does not create a substantive right to an administrative hearing; it merely provides for a procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." Toys "R" Us v. Township of Mount Olive, 300 N.J. Super. 585, 590 (App. Div. 1997). Under the APA, an agency head has the exclusive authority to determine whether a case is a contested case within the intent of the APA. N.J.S.A. 52:14F-7(a); N.J.A.C. 1:1-4.1; Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 392 (App. Div. 2001). A hearing is only required if the matter before the agency presents contested material issues of fact. Sloan, 342 N.J. Super. at 392 (citing N.J.S.A. 52:14B-2(b)). When there are no contested material issues of fact, the matter is not considered a "contested case." Ibid.

There was no dispute as to the material facts in this case. Through his attorney's April 18, 2018 correspondence to the Division, Kesner admitted he received a $32,000 pension loan in 2004. Kesner further acknowledged Hillick

gave him a check, which he brought to the Division to satisfy the arrears. In his January 19, 2018 email, Kesner described the amount as "a lump sum payment."

Importantly, Kesner has never challenged the Division's contention that he purchased military service credit or the accuracy of its May 20, 2004 quotation of the balances owed for the arrears on that purchase and his outstanding pension loan. Notably, the sums are similar: the arrears balance was $31,338.41; the loan balance was $31,635.02. But, the May 20, 2004 quotation clearly specified the arrears balance must be fully paid prior to retirement, while the loan balance could be paid in a lump sum or $610.36 would be deducted monthly from Kesner's pension checks. And, Kesner offered no explanation to refute the Division's June 22, 2004 report that his $31,338.41 check was received for "[a]rrears."

Because this was not a contested case, there was no need for a hearing before the OAL. Cf. Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012) (recognizing in the context of opposition to a summary judgment motion under Rule 4:46-2(c) "[b]are conclusory assertions, without factual support in the record, will not defeat a meritorious application"). Similarly here, Kesner reiterates his conclusory assertions that he paid the loan, when his sole "lump sum" payment only satisfied the arrears on his purchase of

13

service credit. And, that arrears balance was required to be satisfied prior to retirement.

In the alternative, Kesner belatedly urges us to apply "the equitable concept of laches as the Division's inexcusable delay in attempting to collect the loan created undue prejudice and his inability to prove, with direct evidence, that he already repaid the loan." In that regard, Kesner asserts because Hillick is dead, Kesner cannot prove he repaid the loan. We need not address the application of a doctrine, such as laches, that was not raised below; is not jurisdictional in nature; and does not substantially implicate the public interest. See In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2021).

Nonetheless, we acknowledge the Board rejected Kesner's request to waive the repayment of his loan balance and the accrued interest, presumably because Kesner could not prove he paid the loan in light of Hillick's death. Although the record before us does not reveal that Kesner specifically argued the applicability of the doctrine of laches, we note equitable remedies were not available here, where the Board acted pursuant to its statutory authority. See

N.J.S.A. 43:16A-16.2 and -18; see also Wolfson v. Bonello, 270 N.J. Super 274, 286 (App. Div. 1994) (recognizing the well-established principle that "equity follows the law").

Accordingly, Kesner was required to repay the outstanding loan balance. See N.J.S.A. 43:16A-16.2. And the Board was statutorily mandated to correct the Division's error. See N.J.S.A. 43:16A-18. Notably, the PFRS statute does not contain a limitations period. Cf. N.J.S.A. 54:51A-7 (limiting the tax court's power to correct clerical errors "upon the filing of a complaint at any time during the tax year or within the next [three] tax years thereafter").

Moreover, as we recognized more than fifty years ago:

> The pension statute is carefully drawn to protect the integrity of the public and contributed funds from which pensions are paid. Administrative errors by officials in respect of such funds, which are a public trust, cannot on the theory of estoppel be permitted to aggrandize the specific statutory rights of qualified pensioners into illegal depletions of such funds for their private benefit.
>
> Tubridy v. Consol. Police & Firemen's Pension Fund Comm'n, 84 N.J. Super. 257, 263 (App. Div. 1964).

We are therefore compelled to affirm the Board's decision, which is consistent with the governing law and the public policy that is aimed at protecting the overall pension scheme.

15

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0775-19T3